DEAN NEVIN BULLOCK, Appellant, *v.* THE STATE OF NEVADA, DEPARTMENT OF MOTOR VEHICLES, Respondent.

No. 18556

June 2, 1989 . 775 P.2d 225

*Langton & Kilburn,* Reno, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Cheryl A. Lau,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

By the Court, Rose, J.:

At approximately 6:40 a.m., on January 10, 1987, Reno Police Officer Jeff Bond was patrolling in East Grove Street when he observed a Plymouth van in the parking lot of the Grand Ballroom. The vehicle's engine was running as evidenced by its exhaust; its parking lights were on. Curious, Officer Bond approached the vehicle, and observed appellant Dean Nevin Bullock seated in the driver's position. The driver's chair was in a reclined position and Bullock lay motionless, with his hands in his jacket pockets and his eyes closed.

Officer Bond entered the vehicle from the passenger door and turned off the ignition. After repeated attempts, he succeeded in

awakening Bullock. Bond detected an odor of an intoxicating beverage upon Bullock's breath, and observed that Bullock's eyes were watery and bloodshot. When Bullock failed to perform a field sobriety test satisfactorily, Officer Bond placed him under arrest for driving under the influence of intoxicating liquor (DUI) in violation of Reno Municipal Code 6.06.335(a).[1] Subsequent breathalyzer tests measured Bullock's blood alcohol level as .18 percent/.19 percent. Pursuant to NRS 484.385, Officer Bond served upon Bullock a notice of revocation of driver's license. Bullock timely sought administrative review of the revocation of his driving privilege.[2]

An administrative hearing was held on February 18, 1987, before a hearing officer of the Department of Motor Vehicles and Public Safety (DMV). At the hearing, Bullock's primary contention was that he had not been in actual physical control of his vehicle when Officer Bond observed him. Bullock testified that he had been drinking while at a tavern with some friends and, between 2:30 and 3:00 a.m., returned to his vehicle to sleep. As the weather was cold, he started the vehicle and turned on the heater.[3] He testified further that the driver's chair was reclined at a 45 degree angle, rather than 80 degrees as Officer Bond had testified. In addition, Bullock explained that he had turned on the vehicle's parking lights to signal his location to his friends and as a precautionary measure.

The DMV hearing officer affirmed the order revoking Bullock's driving privileges. Thereafter, Bullock petitioned the district court for review of the administrative decision. On September 16, 1987, the district court entered its decision affirming the revocation. This appeal followed.

We have recently determined what actual physical control means as used in NRS 484.379(1).

---

[1]Reno Municipal Code § 6.06.335(a) provides:

> It is unlawful for any person who: (1) is under the influence of intoxicating liquor; or (2) has ten-hundredths (0.10) percent or more by weight of alcohol in his blood, to drive or be in actual physical control of any vehicle or to ride any animal, within the city, on a street, highway, alley or premises to which the public has access.

RMC § 6.06.335(a) was derived from NRS 484.379. As the portions of the two statutes relevant to the disposition of this case are identical, all references hereinafter will be to NRS 484.379.

[2]On February 20, 1987, Bullock moved to dismiss the criminal charges against him. A municipal court judge granted Bullock's motion, and all criminal charges were dropped.

[3]According to Bullock's testimony at the revocation hearing, the National Weather Service reported the temperature that morning as 8° F.

> We conclude that a person is in actual physical control when the person has existing or present bodily restraint, directing influence, domination, or regulation of the vehicle. In deciding whether someone has existing or present bodily restraint, directing influence, domination, or regulation of a vehicle, the trier of fact must weigh a number of considerations, including where, and in what position, the person is found in the vehicle; whether the vehicle's engine is running or not; whether the occupant is awake or asleep; whether, if the person is apprehended at night, the vehicle's lights are on; the location of the vehicle's keys; whether the person was trying to move the vehicle or moved the vehicle; whether the property on which the vehicle is located is public or private; and whether the person must, of necessity, have driven to the location where apprehended.

Rogers v. State, 105 Nev. 230, 773 P.2d 1226 (1989).

Applying the foregoing considerations to the facts of this case, we conclude that Bullock was not in actual physical control of his vehicle when Officer Bond first observed him. Officer Bond's own testimony established that Bullock was asleep in a reclined position when discovered. Bullock's hands were in his jacket pockets; his eyes were closed. So situated, he had become a passive occupant. The vehicle was parked in a private parking lot a substantial distance from the highway. When awakened, Bullock did not attempt to operate his vehicle. There is no indication that he had driven to the location that morning.

Under these facts, the district court erred in affirming the decision of the DMV hearing officer. Accordingly, we reverse the district court's decision and remand this matter to that court with instructions to order appellant Dean Nevin Bullock's driving privileges reinstated.[4]

Young, C. J., and Springer, J., concur.

Steffen, J., joined by Mowbray, J., dissenting:

I dissent.

In my view, the majority have misperceived the thrust of the actual physical control provision contained in NRS 484.379. Both the hearing officer and the district court judge understood, correctly I submit, that the legislature sought by that language to discourage intoxicated persons from entering their vehicles in the capacity of operators in areas accessible to the public.

I agree with the hearing officer's conclusion that although "it is commendable for an individual not to drive his vehicle once he is

---

[4]The Honorable Robert E. Rose, Justice, participated in the decision of this appeal upon the record, briefs and recording of the oral argument.

incapable of safely operating his vehicle in his condition, the purpose of the 'physical control provision' is preventative in nature and designed to discourage drivers from testing their diminished driving ability. A person sleeping it off is considered to be a continuing threat to public safety, as there is no assurance that the intoxicated individual will [not] awaken and believe himself to be allright and operate his vehicle while still impaired."

The majority's decision is contrary to the prevailing view that actual physical control includes "constructive" control of a vehicle. *See, e.g.,* City of Cincinnati v. Kelley, 351 N.E.2d 85 (Ohio 1976); City of Toledo v. Voyles, 471 N.E.2d 823 (Ohio App. 1984); Hughes v. State, 535 P.2d 1023 (Okla.Crim.App. 1975); Adams v. State, 697 P.2d 622 (Wyo. 1985). In *Adams,* 697 P.2d at 623-624, the court noted that the defendant was parked about twenty feet off the side of the highway, the engine was not running, no lights were on, the keys were in the ignition, but in the "off" position, and the defendant was unconscious in the driver's seat behind the steering wheel. In affirming defendant's conviction, the court held that "[a]s long as a person is physically or bodily able to assert dominion in the sense of movement by starting the car and driving away, then he has substantially as much control over the vehicle as he would if he were actually driving it." *Id.* at 625 (citing State v. Webb, 274 P.2d 338 (Ariz. 1954)).

In the instant case, it is beyond cavil that Bullock had domination and actual physical control of his vehicle. He alone was in the vehicle, he was the owner of the car and he alone would have determined when to drive away and whether his faculties were sufficiently free from the influence of alcohol. Moreover, the vehicle was parked partially within the travel lane of the parking lot of the Grand Ball Room. Furthermore, the arresting officer testified, contrarily to Bullock, that Bullock was directly behind the steering wheel in an upright position. The engine was running and the parking lights were on. Although asleep, Bullock was poised to simply drive away at his own command, however impaired. I believe it was precisely that risk that the legislature sought to discourage by the enactment of the "actual physical control" provision of NRS 484.379.

Under Nevada's public policy, intoxicated persons are to refrain from entering vehicles as drivers or potential drivers if the vehicles are located in areas accessible to the public. Thus, intoxicated persons having access to such vehicles should enter them only as passengers. I respectfully suggest that the majority have diminished the efficacy of Nevada's statutory scheme by today's ruling. I therefore dissent.