NICKY DEAN ROGERS, APPELLANT, v. THE
STATE OF NEVADA, RESPONDENT.

No. 17974

May 18, 1989                                                     773 P.2d 1226

*Terri Steik Roeser,* State Public Defender, *Robert Morris,* Deputy, and *Michael K. Powell,* Chief Appellate Deputy, Carson City, for Appellant.

*Brian McKay,* Attorney General, Carson City; *William G. Rogers,* District Attorney, and *James N. Varner,* Deputy, Lyon County, for Respondent.

## OPINION

*Per Curiam:*

Just before 2:00 a.m., May 4, 1986, two Lyon County Sheriff's officers drove past a silver Camaro parked on the edge of Highway 50, in the west-bound lane. The Camaro was parked in the emergency lane, which was apparently about two feet wide, such that the car extended approximately one foot into the normal traffic lane.

The officers returned to examine the vehicle. The engine was running, the transmission apparently in neutral or park. Reserve Officer Kidd noticed that the headlights were on. The only occupant was sleeping, slumped over the steering wheel. Officer McKibben knocked on the window to get the driver's attention, but he did not respond. McKibben then opened the door and identified himself. Rogers awakened and asked "What?" Rogers told the officers he had stopped to sleep.

Rogers then closed the door, revved the engine, and began turning the steering wheel. McKibben again opened the door and asked Rogers to step out and perform a field sobriety test, i.e., recite the alphabet, perform a finger count, and do a finger-to-nose test. Rogers successfully recited the alphabet. He had diffi-

culty, however, with the finger count.[1] On the finger-to-nose test, Rogers correctly touched the tip of his nose with his right hand, but touched the side of his nose with his left. McKibben testified that, although Rogers did not appear unkempt, his speech was slurred and his breath smelled of alcohol.

McKibben then arrested Rogers for driving under the influence and took him for a blood test. His blood, drawn about two hours after the arrest, reflected an alcohol level of 0.1014 percent.

A jury convicted Rogers of violating NRS 484.379, his third such conviction. He was sentenced to four years and fined $2,000. Rogers appeals.

## DISCUSSION

This case presents one important issue for our consideration. NRS 484.379(1) provides:

> It is unlawful for any person who:
> (a) Is under the influence of intoxicating liquor; or
> (b) Has 0.10 percent or more by weight of alcohol in his blood, to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access.

As Rogers was not driving at the time he was apprehended, the issue that must be decided is whether he was in "actual physical control" of the Camaro.

NRS 484.379 proscribes both driving and being in actual physical control of a vehicle while under the influence. Accordingly, we must assume that the statute does not contain a redundant phrase, but rather includes the term "actual physical control" to encompass activity broader than or different from driving a vehicle. Moreover, use of the disjunctive "or" between the term "drive" and the term "be in actual physical control"

---

[1] Officer McKibben testified as to the finger count:

Q. What is the finger count?
A. Counting your fingers forwards and backwards, touching thumb to finger: one, two, three, four, five. Five, four, three, two, one.
Q. And did you demonstrate it for him?
A. Yes I did.
Q. And did you explain for him how to do it?
A. Yes.
Q. Did he do it?
A. Made two attempts.
Q. And how did he perform on each one of those?
A. The first time, he would touch his thumb and four fingers, but he would count them out of order, and the second time he would count out of order, not touching his thumb or his finger, just moving his fingers.
Q. Did he appear to have some difficulty with that test?
A. Yes.
Q. Did—In your opinion, did he pass the test?
A. No.

suggests that the two terms have different meanings. *See* State v. Webb, 274 P.2d 338, 339 (Ariz. 1954); People v. Pomeroy, 355 N.W.2d 98, 102 (Mich. 1984) (Levin J., dissenting); Parker v. State, 424 P.2d 997, 1000 (Okla.Crim.App. 1967). Obviously, the objective in requiring the arrest of those who are not driving but who are in actual physical control of a vehicle, is to prevent and discourage persons from placing themselves in control of a vehicle where they may commence or recommence driving while in an intoxicated state, notwithstanding the fact that they are not actually driving at the time apprehended.

Many courts have considered the issue of what constitutes actual physical control of a motor vehicle. *See generally,* Annotation, *What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance,* 93 A.L.R.3d 7 (1979). These courts have articulated several definitions of actual physical control;[2] and courts facing situations very similar to the instant case have decided differently. *Compare* Kirby v. State, Dept. of Public Safety, 262 N.W.2d 49 (S.D. 1978) (motorist in actual physical control when sitting behind wheel of vehicle, asleep, with motor running, parking lights on, and vehicle positioned with its left wheels on edge of traffic lane of city street) *with* People v. Pomeroy, 355 N.W.2d 98 (Mich. 1984) (motorist not in actual physical control when sitting behind wheel of vehicle, asleep, with motor running, headlights off, and vehicle legally parked in front of a bar on a street). Not surprisingly, defense counsel and the State have cited language and logic from those cases supporting their respective positions.

After consideration of the many cases discussing the concept of actual physical control, the parties' briefs, and oral argument, we conclude that a person is in actual physical control when the person has existing or present bodily restraint, directing influence, domination, or regulation of the vehicle.[3] In deciding whether someone has existing or present bodily restraint, directing influence, domination, or regulation of a vehicle, the trier of fact must weigh a number of considerations, including where, and in what position, the person is found in the vehicle; whether the vehicle's engine is running or not; whether the occupant is

---

[2]For a summary of the definitions courts have developed, see *What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance, supra,* at 18-19.

[3]State v. Ruona, 321 P.2d 615, 618 (Mont. 1958); City of Kansas City v. Troutner, 544 S.W.2d 295, 300 (Mo.Ct.App. 1976); Hughes v. State, 535 P.2d 1023, 1024 (Okla.Crim.App. 1975); Commonwealth v. Klock, 327 A.2d 375, 383 (Pa.Super.Ct. 1974); State v. Bugger, 483 P.2d 442, 443 (Utah 1971).

awake or asleep;[4] whether, if the person is apprehended at night, the vehicle's lights are on; the location of the vehicle's keys; whether the person was trying to move the vehicle or moved the vehicle; whether the property on which the vehicle is located is public or private; and whether the person must, of necessity, have driven to the location where apprehended.[5]

Applying these considerations to the case at hand, we conclude that the jury correctly found, under NRS 484.379, that Rogers was regulating, dominating, directing and influencing the car he was in. Rogers was found parked on a public highway, partially in a traffic lane, and not on private property. He apparently drove the car to that location. When apprehended, the car's engine was running and its lights were on. Rogers, though asleep and slumped over, was seated in the driver's position, directly behind the steering wheel. In this situation, Rogers could have easily resumed driving; indeed, he took measures apparently designed for doing so. Accordingly, we conclude that Rogers was, under NRS 484.379(1), in actual physical control of the car.

We have fully examined the remaining issues raised by appellant and conclude that they are without merit. Accordingly, we affirm Rogers' judgment of conviction.

---

[4]Rogers argues that a person who is asleep cannot be in actual physical control of anything, and that the use of the modifier "actual" prohibits judicial interpretation of NRS 484.379 to include constructive control. He also argues that a sleeping person cannot form the requisite criminal intent necessary for a conviction. However, as noted in *Webb*:

> While at the precise moment defendant was apprehended he may have been exercising no conscious volition with regard to the vehicle, still there is a legitimate inference to be drawn that defendant had of his own choice placed himself behind the wheel thereof, and had either started the motor or permitted it to run. He therefore had the "actual physical control" of that vehicle, even though the manner in which such control was exercised resulted in the vehicle's remaining motionless at the time of his apprehension.

274 P.2d at 340. Accordingly, if a defendant was sleeping when apprehended, this may be one factor that suggests that he or she was not in actual physical control of a vehicle; however, it is not, as Rogers argues, totally dispositive evidence that actual physical control did not exist.

[5]For example, if, after leaving a bar, a person under the influence flopped into the back seat of his vehicle, while the vehicle was yet in the bar's parking lot, and fell asleep without starting or driving the vehicle, the person would not, under NRS 484.379, be in actual physical control of the vehicle. On the other hand, if an intoxicated person started the car, drove onto a public highway, and pulled onto an emergency lane to change a flat tire, that person would clearly be in actual physical control, notwithstanding the fact that he or she had stopped the vehicle before the police arrived. Between the two ends of such a hypothetical spectrum lie a multitude of factual possibilities, each of which must be determined according to its specific facts and the considerations we have mentioned.