789 P.2d 1136

**In the Matter of the Suspension of the Driver's License of Mark Alan VOGT.**

**Mark Alan VOGT,**
**Petitioner–Respondent–Respondent**
**on Appeal,**

v.

**STATE of Idaho,**
**Respondent–Appellant–Appellant**
**on Appeal.**

No. 17692.

Supreme Court of Idaho.

March 28, 1990.

Jim Jones, Atty. Gen., Myrna A.I. Stahman (argued), Deputy Atty. Gen., Boise, for respondent-appellant.

Mark Alan Vogt, Bellevue, pro se, petitioner-respondent.

McDEVITT, Justice.

Respondent Vogt, Dempsey Wade and Rick (last name unknown), the owner of the vehicle in question, were out drinking on the night of March 11, 1988. When they left the bar, Wade took control of the vehicle from Rick, because he felt that both Rick and Vogt were too intoxicated to drive. Wade drove the vehicle, an older Studebaker truck, Vogt was in the middle, and Rick sat on the far right. During the drive both passengers either fell asleep or passed out. Wade, not knowing where either man lived, drove to a store parking lot within a block of his own house and left the truck running with the heater on. It was a cold night and he did not want the men to freeze in the car. At about 11:30 p.m. Wade walked home.

At approximately 1:00 a.m., Deputy Sheriff Sharp found the pickup in the same location where Wade had left it. The engine was still running, and Vogt and Rick were still asleep or unconscious inside. Deputy Sharp testified that Vogt's feet were both on the floor. Vogt testified that his feet were straddling the gear shift lever, with one foot on the driver's side and the other on the passenger side. Rick was lying down across the seat, with his head in Vogt's lap.

Sharp rapped several times on the window of the truck before Vogt awoke. Sharp testified that Vogt turned off the ignition with his right hand. Vogt testified that he turned off the ignition with his left hand.

Deputy Sharp asked to see Vogt's driver's license, and requested that he perform a field sobriety test. Vogt refused, claiming that he need not take the test because he was not driving the car. Sharp took

Vogt to the Canyon County Detention Center, where he was provided with a standard rights advisory form. Sharp testified that Vogt was again asked to submit to a breath test, and refused.

Vogt's driver's license was seized for refusing to take the test. Vogt requested a show cause hearing. At the hearing, Dempsey Wade, Deputy Sharp and Vogt testified. The magistrate found that although "the defendant was behind the wheel," Deputy Sharp did not have probable cause to believe that Vogt was in actual physical control of the pickup and "had intended to operate and drive that vehicle" because Vogt was unconscious. The magistrate ordered Vogt's license returned. The district court affirmed.

Idaho Code § 18–8002 provides:

(1) Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to an evidentiary test for concentration of alcohol ... at the request of a police officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle while under the influence of alcohol, ...

\* \* \* \* \* \*

(4) If the motorist refuses to take the evidentiary test ... [h]is license or permit shall be seized by the police officer....

\* \* \* \* \* \*

(7) "Actual physical control" as used in this section, shall be defined as being in the driver's position of the motor vehicle with the motor running or with the motor vehicle moving.

In its Appellate Memorandum Decision and Order, the district court reviewed the magistrate's findings of fact:

Here, the Magistrate found: Vogt was at all times a passenger; Vogt neither intended to drive nor to exert any physical control over the vehicle. This finding of no intent is critical.... [The] evidence shows Vogt was a passenger, who had not previously and did not intend at any time to exercise physical control over the vehicle. The facts indicate Vogt was either not driving or was unconscious, until Sharp woke him up.

■ The state takes exception to the district court's reliance on a finding of intent to drive in determining whether the a license may be revoked. The State argues that it should not be required, in the context of driver's license suspension for failure to submit to a Blood Alcohol Content (BAC) test, to prove that a person found in the driver's position of a motor vehicle with the motor running actually intended to drive.

The leading case on this proposition is *In re State v. Clayton*, 113 Idaho 817, 748 P.2d 401 (1988), wherein the defendant argued that he was not in "actual physical control" of his running vehicle because he was slumped over the wheel and unconscious. This Court rejected this argument, stating that:

Idaho Code § 18–8002(7) requires the defendant to be in the driver's position. Here, Clayton was sitting in the driver's seat behind the steering wheel with the engine running and the lights on. Any time an intoxicated person assumes this position, the public safety and welfare may be threatened, should he determine to operate the vehicle.

113 Idaho at 819, 748 P.2d 401.

We take this opportunity to reaffirm *Clayton*, and hold that the State is not required to prove that a person had any intent to drive in the context of a driver's license suspension hearing under I.C. § 18–8002. The rule does not inquire whether the person is actually posing a danger to the public by driving while intoxicated. Rather, the statute is a prophylactic rule which is intended to discourage intoxicated persons from entering motor vehicles except as passengers. It is no matter how unusual the circumstances leading to the placement of an intoxicated person in the driver's position of a vehicle with the motor running. Once there, the statute is brought into operation.

Courts in other jurisdictions have followed this approach, holding that defendants in various stages of incapacity were

in "actual physical control" in order to preserve the prophylactic nature of the rule and protect the public. *See, Mason v. State,* 603 P.2d 1146 (Okla.Crim.1979); *Hughes v. State,* 535 P.2d 1023 (Okla.Crim. 1975); *State v. Taylor,* 203 Mont. 284, 661 P.2d 33 (1983); *Adams v. State,* 697 P.2d 622 (Wyo.1985); *State v. Bugger,* 25 Utah 2d 404, 483 P.2d 442 (1971); *City of Kansas City v. Troutner,* 544 S.W.2d 295 (Mo. App.1976).

Thus, we hold that the only inquiry before the judge in a driver's license suspension hearing under I.C. § 18–8002 is whether the person is in the "driver's position" of a vehicle with the motor running or with the vehicle moving.

However, our ruling does not dispose of the present case. The magistrate found that Vogt was "behind the wheel" of the vehicle, but made no finding of fact as to whether Vogt was actually in the "driver's position" as the statute requires.

There was conflicting testimony on this point. Deputy Sharp testified that Vogt's feet were on the floor, and he made a crude drawing which appears to place both feet on the driver's side of the car, but the exact position of Vogt's feet according to Sharp is not clear from his testimony. In addition, Sharp testified that Vogt turned off the ignition with his right hand. On the other hand, Vogt testified that his left foot was on the driver's side of the car, but his right foot remained on the passenger side, straddling the gear shift lever. Moreover, he testified that he turned off the ignition with his left hand, a fact which would tend to show that Vogt was not sitting squarely behind the wheel, in the driver's position. The magistrate did not set forth any finding of fact as to the position of Vogt's body, or whether it was actually in the driver's position. Therefore, we must remand for a finding on that issue. If the magistrate finds that Vogt was actually in the "driver's position," then the suspension of his license must be upheld. Otherwise, his license must be returned to him.

No costs on appeal.

BAKES, C.J., and JOHNSON and BOYLE, JJ., concur.

BISTLINE, Justice, specially concurring.

In my view it seems that the magistrate trier of fact has already come extremely close to making the very determination which this Court directs be made on remand. That direction is to make a finding as to the position of Vogt's body, which it is assumed means all of the component parts, when Officer Sharp arrived on the scene. When the magistrate made the decision, based on the evidence before him, that "Vogt was a passenger, who had not previously and did not intend at any time to (drive)," implicit therein was the finding that he was not in the driver's seat, and also that Vogt was having nothing to do with the various mechanisms which collectively go into the operation of an older Studebaker truck, *i.e.,* the foot brake, the clutch, the accelerator, and the gear shift. The majority properly utilizes the provisions of I.C. § 18–8002(7) as the sole criterion by which to determine that Vogt was in "actual physical control"[1] of the Studebaker truck. That provision defines "actual physical control" as being in the driver's position with the motor running.[2] The motor had been left running *by the driver who had departed.*

The magistrate clearly was entitled to find that Vogt had exhibited no intent to operate the truck if it appeared that Vogt's two legs and two feet were not simultaneously positioned to operate both the brake and clutch pedals, and also if his arms and hands were not positioned to control the steering wheel *and* the gear shift lever. Implicit in the magistrate's finding of no intent to drive are the findings of those facts to which Vogt testified, and which are accurately recounted in the

1. This language is unusual. Any person driving, or about to drive, is in physical control. Likewise, such person is in actual control.

2. There is no suggestion that the vehicle was moving, or that either of the two occupants were moving.

majority opinion. Even had Vogt not been asleep or unconscious, any statement by him to that effect would have been superfluous to the apparent and undisputed facts.

The majority today uses this occasion to announce in ringing terms that under I.C. § 18–8002 *any person who is found in the driver's position of a motor vehicle with the motor running shall be deemed* (*i.e.* considered, presumed) *to have given his consent to a sobriety test.* That declaration is clear and unequivocal, and no one should quarrel with it. Henceforth, the person fully occupying the operator's seat of a vehicle the motor of which is running, will know by reason of the court's opinion that he has given his consent to sobriety testing, which he can refuse, but if he refuses he may see his license suspended for 180 days. The fact that he did not intend to operate the vehicle is now of no consequence.

The question remaining to be answered, however, is whether this hard and fast rule which the Court makes in ruling intent to be no defense should be applied retroactively to Vogt. The generally accepted rule is that it should not. For that reason I would affirm the two judges who in fairness did not penalize Vogt for conduct which was thought to be commendable in *State v. Clayton,* 113 Idaho 817, 748 P.2d 401 (1988) (Bistline, J., specially concurring).