813 P.2d 360

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Kenneth L. WOOLF, Defendant–Appellant.**

No. 18054.

Court of Appeals of Idaho.

May 17, 1991.

Petition for Review Denied Aug. 6, 1991.

Spencer E. Daw, Idaho Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen. (argued), for plaintiff-respondent.

WALTERS, Chief Judge.

Kenneth Woolf appeals from the district court's order affirming a magistrate's judgment of conviction for the misdemeanor offense of driving a vehicle while under the influence of alcohol. I.C. § 18–8004. The sole issue on appeal is whether the magistrate erred by finding that Woolf was in "actual physical control" of his car when he was arrested. We affirm.

At 12:30 a.m. on December 19, 1987, Idaho State Police Officer Earl Farmer observed a vehicle parked on the shoulder of Interstate 15 near Blackfoot, Idaho. Officer Farmer noticed that the brake lights were on and the engine was running, so he stopped to investigate. As he walked to the side of the car he noticed that a person, later determined to be Woolf, was inside. Officer Farmer testified that Woolf, who appeared to be asleep or passed out, had the lower half of his body on the driver's side of the front seat, with his upper half resting across the passenger side. His right foot was on the brake and his other foot was on the floor. The officer knocked on the window to awaken Woolf. Once awake, Officer Farmer asked him if he had been drinking.[1] Woolf answered that he had. Officer Farmer then arrested Woolf for operating a motor vehicle while under the influence of alcohol in violation of I.C. § 18–8004.

Woolf moved to dismiss the complaint on the grounds that he was not in "actual physical control of a motor vehicle" as that phrase is used I.C. § 18–8004. Following a hearing, the magistrate denied Woolf's motion. Woolf then entered a conditional guilty plea pursuant to I.C.R. 11. The plea was conditioned on his right to appeal the question of whether the facts in the record support the conclusion that he was in actual physical control of his car when he was arrested. As noted, the district court affirmed the magistrate's judgment of conviction.

We begin by setting forth our standard of review. On appeal from a decision of the district court rendered in its appellate capacity, we consider the record before the magistrate independently of, but with due regard for, the district court's determination. *State v. Allison,* 112 Idaho 572, 733 P.2d 793 (Ct.App.1987). We defer to the trial court's findings of fact unless they are clearly erroneous. *State v. Kysar,* 114 Idaho 457, 757 P.2d 720 (Ct.App.1988). However, we exercise free review as to questions of law. *Standards of Appellate Review in State and Federal Courts* IDAHO APPELLATE HANDBOOK § 3.21 (Idaho Law Foundation, Inc., 2d ed.1989).

Woolf was charged with being in control of a motor vehicle while under the influence of alcohol or drugs in violation of I.C. § 18–8004. Section 18–8004(1)(a) provides that it is unlawful for a person who is under the influence of alcohol or drugs "to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public." "Actual physical control" is defined as "being in the driver's position of the motor vehicle with the motor running or with the motor vehicle moving." I.C. § 18–8004(6). Here, the parties agree that the engine of Woolf's car was running when Officer Farmer approached the vehicle. As a result, our focus is upon the correctness of the magistrate's ruling that Woolf was "in actual physical control" of his car, that is, in the "driver's position" when Officer Farmer found him.

Idaho's appellate courts have considered the legislative definition of "actual physical control" in three different opinions. *In Matter of Clayton,* 113 Idaho 817, 748 P.2d 401 (1988), our Supreme Court determined that the defendant was in the "driver's position" in his vehicle as the term is used in I.C. § 18–8002(7) (the implied consent statute), which contains the same definition of actual physical control as I.C. § 18–8004(6). The defendant in *Clayton* had been found passed out while sitting in the driver's seat. He was slumped over

---

1. The appellant has not raised any issue in this appeal concerning probable cause for the officer to question him after he awakened.

the steering wheel, the vehicle's engine was running and its lights were on.

In *State v. Cheney*, 116 Idaho 917, 782 P.2d 40 (Ct.App.1989), this Court reviewed a conviction under I.C. § 18–8004(1)(a) and discussed the phrase "actual physical control." Cheney was found asleep while sitting upright in the driver's seat of his vehicle. His head was resting on his chest. The lights of automobile were on and the motor was running. Cheney argued that the vehicle was inoperable at the time of his arrest due to a loss of transmission fluid. This Court found that the evidence did not support Cheney's contention and therefore did not address the "inoperability" issue. However, the Court did find that the evidence presented at trial supported the conclusion that Cheney was in the driver's position when he was arrested, therefore, he was in actual physical control of the vehicle.

In *Matter of Vogt*, 117 Idaho 545, 789 P.2d 1136 (1990), our Supreme Court again reviewed the definition of "actual physical control" found in I.C. § 18–8002(7). In that case, Vogt had been a passenger in a vehicle driven by another person. Both had been drinking. Because the driver did not know where Vogt lived, he parked his Studebaker truck in a store parking lot and walked home, leaving Vogt and another friend asleep in the front seat of the truck with the motor running and the heater on. When found and awakened by a deputy sheriff, Vogt refused to take a sobriety test because he claimed he was not driving the truck. The deputy arrested Vogt.

The position of Vogt's body in the front seat was disputed during the evidentiary hearing to determine whether Vogt's driving privileges should be suspended pursuant to I.C. § 18–8002. Ultimately, the magistrate ordered that Vogt's license should be returned to him. The district court affirmed and the state appealed again. The Supreme Court remanded the case to the magistrate because the magistrate had not made "any finding of fact as to the position of Vogt's body or whether [he] was actually in the driver's position." 117 Idaho at 547, 789 P.2d at 1138.

*Vogt* is significant by indicating that it is within the province of the trial court to make the initial factual determination of whether a person is in the driver's position and is therefore in actual physical control of the vehicle. In the instant case, the magistrate found that Woolf was in actual physical control of his car when he was arrested. The facts in the record support the magistrate's finding. Accordingly, we conclude that the magistrate's finding was not clearly erroneous. Therefore, we will uphold that finding.

Woolf argues that his intent not to drive should be used as a guideline in determining whether he was exercising actual physical control over his vehicle. He argues that he made a conscious effort to stop driving when he pulled his car over to the side of the road, turned out its lights, kept the motor running to provide heat on a cold December night, and deliberately laid over in the front seat and went to sleep. Woolf contends that these circumstances indicate that he did not intend to drive or exert control over his vehicle. Woolf cites *Clayton* to support his position, stating that the driver in that case had every intention of driving, but was prevented from doing so only because he had passed out.

We are not persuaded that Woolf's subjective intent with regard to driving his vehicle is controlling. Our Supreme Court addressed such an issue in *Vogt* and held that

> the State is not required to prove that a person had any intent to drive in the context of a driver's license suspension hearing under I.C. § 18–8002. The rule does not inquire whether the person is actually posing a danger to the public by driving while intoxicated. Rather, the statute is a prophylactic rule which is intended to discourage intoxicated persons from entering motor vehicles except as passengers.... Thus we hold that the only inquiry in a driver's license suspension hearing is whether the person is in the 'driver's position' of a vehicle with the motor running or with the vehicle moving.

*Vogt,* 117 Idaho at 546, 789 P.2d at 1137. Arguably, the Supreme Court's holding in *Vogt* should be limited only to license suspension proceedings because of the nature of that case and the language used by the Court. Such a position, however, would not be logical with respect to prosecutions under I.C. § 18–8004(6) in light of the identical definitions of "actual physical control" contained in I.C. § 18–8002(7) and I.C. § 18–8004(6). Moreover, our Supreme Court in *Vogt* cited decisions from five neighboring jurisdictions which had held that defendants in various stages of incapacity were in "actual physical control" of their vehicles under the respective state's statutes. A close reading of those cases, cited at page 545 of the Idaho Reports and 789 P.2d at 1138, discloses that each involved a prosecution for driving while under the influence, as distinguished from license suspension proceedings. Consequently, applying the Court's observation in *Vogt* to the instant case, we hold that Woolf's intent whether to drive his vehicle is immaterial.

Finally, Woolf argues that a finding that he was in actual physical control of his car when he was arrested would promote bad public policy because it would discourage drivers from pulling off the highway and sleeping until they are sober enough to drive. We agree with Woolf's premise that any statute which discourages socially responsible action, such as pulling one's vehicle off the road when one feels drowsy or unable to proceed, is counterproductive. As Justice Bistline stated in *Clayton,* "Drivers should not be discouraged from pulling over and sleeping it off when they recognize that they are too intoxicated, or somewhat intoxicated and drowsy, to remain in control." *Clayton,* 113 Idaho at 820, 748 P.2d at 404 (Bistline, J., specially concurring).

However, we disagree with Woolf's conclusion that a finding that he was in actual physical control of his vehicle would promote bad policy. The legislature of this state and others across the nation have made it clear, through their drunk-driving laws, that any action posing a danger to public safety and welfare will not be tolerated. Thus, though Woolf did pull off the road, turn out his lights and go to sleep, there remained a chance of injury to the innocent public. Woolf could have awakened, still intoxicated, and driven on. His foot could have slipped from the brake, or his movements within the car could have released the parking brake and sent him careening down the road, with Woolf still unconscious inside. As noted in *Clayton,* "Any time an intoxicated person assumes [the driver's] position, the public safety and welfare may be threatened...." 113 Idaho at 819, 748 P.2d at 403. We are bound by the Supreme Court's expression of policy in *Clayton.*

Accordingly, we affirm Woolf's judgment of conviction.

SWANSTROM, J., concurs.

SCHILLING, Judge Pro Tem., dissenting.

I respectfully dissent because I believe that the defendant was not in "actual physical control" as defined by I.C. § 18–8004(6). I agree with the standard of review as set forth in the majority opinion; however, in my opinion, the trial court's finding that Woolf was in "actual physical control" of his car was clearly erroneous.

The record reflects additional factual details that help in understanding this case. The vehicle in which the defendant was found was a Subaru Brat. The officer estimated its width at approximately 4'8". It is a pick-up type vehicle with bucket seats, that is, one seat on the front left side and one seat on the front right side with no rear seat. The divider between the two front seats is level with the seats.

Critical to the resolution of the issue in this case is the position of the defendant's body. At the time he was observed by Officer Farmer, the defendant was laying over the front seats of the vehicle. The defendant's right foot was on the brake. His left foot was on the floor board. The defendant's rear-end was sideways to the front of the vehicle with his right buttock resting on the driver's seat. The remainder of the defendant's body was laying to

the right across the seat divider and onto the passenger seat. The defendant's right shoulder and head were resting on the right (passenger) seat.

The issue on appeal is whether the defendant was in "actual physical control" as defined by I.C. § 18–8004(6).

The defendant was charged with "control of a motor vehicle while under the influence of alcohol and/or drugs ... in violation of ... Idaho Code 18–8004." The pertinent part of that statute reads:

18–8004. **Persons under the influence of alcohol, drugs or any other intoxicating substances.—**

(1)(a) It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or who has an alcohol concentration of 0.10, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in *actual physical control* of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public. . . .

(6) "Actual physical control" as used in this section, shall be defined as *being in the driver's position of the motor vehicle* with the motor running or with the motor vehicle moving. [Emphasis added.]

Many cases can be found from other jurisdictions regarding when a defendant is in actual physical control of a motor vehicle. *See for example, Lathan v. State,* 707 P.2d 941 (Alaska App.1985); *State v. Taylor,* 203 Mont. 284, 661 P.2d 33 (1983); *Rogers v. State,* 105 Nev. 230, 773 P.2d 1226 (1989); *Mason v. State,* 603 P.2d 1146 (Okla.Crim.App.1979); *Adams v. State,* 697 P.2d 622 (Wyo.1985); and ANNOT., *Operating Motor Vehicle While Intoxicated* 93 A.L.R.3d 7 (1979). However, the authority from other jurisdictions is of limited applicability in light of the specific definition contained in the Idaho statute.

Driving while under the influence has been proscribed in Idaho since the adoption in 1927 of the Uniform Act Regulating the Operation of Vehicles on Highways. 1927 Idaho Sess.Laws, ch. 260, § 2. Later, the Idaho legislature determined that not only driving while under the influence but also being in actual physical control of a motor vehicle while under the influence would be unlawful. In 1983, the legislature added a definition for the phrase "actual physical control" for purposes of both the criminal offense of driving while under the influence and the implied consent statute. These codification are presently found in I.C. §§ 18–8002(7) and 18–8004(6). The definition of "actual physical control" is exactly the same in both statutes.

It is a well–settled rule of statutory construction in Idaho that words of a statute are given their plain, usual and ordinary meaning, in the absence of any ambiguity. *Miller v. Miller,* 113 Idaho 415, 745 P.2d 294 (1987); *Walker v. Hensley Trucking,* 107 Idaho 572, 691 P.2d 1187 (1984); *State v. Moore,* 111 Idaho 854, 727 P.2d 1282 (Ct.App.1986). As a general rule, "[i]t is well settled that penal statutes are subject to a strict construction. More accurately, it may be said that such laws are to be interpreted strictly against the state and liberally in favor of the accused." 73 AM. JUR.2d *Statutes,* § 293 (1974). Idaho courts have followed the general rule in holding that criminal statutes are strictly construed in their substantive elements and in their sanctions. *State v. Thompson,* 101 Idaho 430, 614 P.2d 970 (1980); *State v. McKaughen,* 108 Idaho 471, 700 P.2d 93 (Ct.App.1985).

In *State v. Thompson, supra,* 101 Idaho at 437, 614 P.2d at 977, the Supreme Court followed the principles set forth in *State v. Hahn,* 92 Idaho 265, 267, 441 P.2d 714, 716 (1968):

A statute defining a crime must be sufficiently explicit so that all persons subject thereto may know what conduct on their part will subject them to its penalties. [Citations omitted.] A criminal statute must give a clear and unmistakable warning as to the acts which will subject one to criminal punishment, and courts are without power to supply what the legislature has left vague. [Citations omitted.] An act cannot be held as crimi-

nal under a statute unless it clearly appears from the language used that the legislature so intended. [Citations omitted.]

The Idaho appellate courts have considered the legislative definition of "actual physical control" in three opinions.

In *Matter of Clayton*, 113 Idaho 817, 748 P.2d 401 (1988), the Idaho Supreme Court determined that the defendant was in the "driver's position" pursuant to I.C. § 18–8002(7) where the defendant "was sitting in the driver's seat behind the steering wheel with the engine running and the lights on." 113 Idaho at 819, 748 P.2d at 403.

In *State v. Cheney*, 116 Idaho 917, 782 P.2d 40 (Ct.App.1989), this Court reviewed a conviction under I.C. § 18–8004(1). A portion of that decision dealt with the term "actual physical control." In that case, "[t]he vehicle's lights were on and the engine was running. Cheney was seated in the driver's seat of the automobile with his eyes closed and his head resting on his chest." 116 Idaho at 917, 782 P.2d at 40. Cheney argued that the vehicle was inoperable at the time of his arrest due to the loss of transmission fluid. This Court found that the evidence did not support the contention that the vehicle was inoperable and therefore did not address that issue. Further, the Court found that the evidence adduced at trial, *e.g.*, Cheney being in the driver's seat of his automobile, asleep, with the lights on and the motor running, supported his conviction.

In *Matter of Vogt*, 117 Idaho 545, 789 P.2d 1136 (1990), our Supreme Court reviewed the "actual physical control" definition of I.C. § 18–8002(7) which again is identical to I.C. § 18–8004(6). The Supreme Court in that case provides us with guidance in analyzing the present case. Vogt had been a passenger in a vehicle driven by another person. Because the driver did not know where Vogt lived, he had left Vogt sleeping in the front seat of the vehicle with the motor running and the heater on. The position of Vogt's body in the front seat of the vehicle was the subject of conflicting evidence during the evi-

dentiary hearing to determine whether Vogt's driving privileges should be suspended pursuant to I.C. § 18–8002.

The magistrate ordered that Vogt's license should be returned to him finding that:

> although "the defendant was behind the wheel," Deputy Sharp did not have probable cause to believe that Vogt was in actual physical control of the pick-up and "had intended to operate and drive that vehicle" because Vogt was unconscious.

117 Idaho at 546, 789 P.2d at 1137. In affirming the magistrate's decision, the district court stated:

> Here, the Magistrate found: Vogt was at all times a passenger; Vogt neither intended to drive nor to exert any physical control over the vehicle. This finding of no intent is critical.... [The] evidence shows Vogt was a passenger, who had not previously and did not intend at any time to exercise physical control over the vehicle. The facts indicate Vogt was either not driving or was unconscious until Sharp woke him up.

*Id.*

On the issue before the Supreme Court, it held "that the State is not required to prove that a person had any intent to drive in the context of a driver's license suspension hearing under I.C. § 18–8002." 117 Idaho at 546, 789 P.2d at 1137. The Supreme Court went on to state:

> Thus, we hold that the only inquiry before the judge in a driver's license suspension hearing under I.C. § 18–8002 is whether the person is in the "driver's position" of a vehicle with the motor running or with the vehicle moving.

*Id.* The Supreme Court remanded the case to the magistrate because:

> The magistrate did not set forth any finding of fact as to the position of Vogt's body, or whether it was actually in the driver's position. Therefore, we must remand for a finding on that issue.

*Id.*

The Supreme Court noted that no findings of fact were made on the position of the driver's feet or whether Vogt turned

off the ignition with his right hand or his left hand tending to indicate whether Vogt was "sitting squarely behind the wheel, *in the driver's position.* " [Emphasis added.] 117 Idaho at 547, 789 P.2d at 1138.

In the present case, the critical facts are not in dispute. The defendant's feet were under the steering wheel with his right foot on the brake pedal and his left foot on the floor board. The defendant's rear-end was sideways on the front seat with his right buttock resting on the driver's seat. The defendant was not sitting in the driver's seat behind the steering wheel. The defendant's upper body was laying across the seat divider with his right shoulder and head resting on the passenger seat.

I agree with the policy set forth in the majority opinion; however, I.C. § 18-8004 is a penal statute and must be construed strictly. Applying that strict construction to the facts before this Court and giving the definition of I.C. § 18-8004(6) its plain, usual and ordinary meaning, I conclude that Woolf was not in the "driver's position."

Therefore, I would reverse the decisions of the magistrate and the district court and remand with direction that the charge against the appellant be dismissed.