Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/26/2016 02:10 PM CDT

State of Nebraska, appellee, v.
Bruce V. Rask, appellant.
___ N.W.2d ___

Filed August 26, 2016.    No. S-15-1009.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.
2. **Criminal Law: Juries: Evidence: Appeal and Error.** In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt.
3. **Verdicts: Juries: Appeal and Error.** In a harmless error review, an appellate court looks at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the guilty verdict rendered in the trial was surely unattributable to the error.
4. **Jury Instructions: Judgments: Appeal and Error.** Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.
5. **Blood, Breath, and Urine Tests: Evidence: Proof: Probable Cause.** As a general rule, preliminary breath test evidence is inadmissible as proof that a defendant was impaired or intoxicated; the admissibility of the results of a preliminary breath test is limited to the purpose of showing probable cause either for an arrest or for administering a chemical test.
6. **Drunk Driving: Blood, Breath, and Urine Tests: Implied Consent.** Chemical test results are admissible in all legal proceedings, even if that chemical test was administered without the advisement required under Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2014).

7. ____: ____: ____. Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2014) permits evidence of refusal to prove driving under the influence charges, even when the defendant was not properly informed that refusal is a separate crime.

8. **Statutes.** In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning.

9. **Blood, Breath, and Urine Tests: Evidence.** A defendant's refusal to submit to a chemical test is evidence of the defendant's conduct, demeanor, statements, attitudes, and relation toward the crime.

10. **Trial: Judges: Jury Instructions: Appeal and Error.** It is the duty of a trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the omission of certain elements have the effect of withdrawing from the jury an essential issue or element in the case are prejudicially erroneous.

11. **Motor Vehicles.** Where a person sits in the driver's seat of a motor vehicle with the engine running, parked on a public road, that person has actual physical control of that motor vehicle.

12. **Words and Phrases.** The word "or," when used properly, is disjunctive.

13. **Motor Vehicles: Words and Phrases.** Actual physical control of a motor vehicle may be adequately defined as directing influence, dominion, or regulation of a motor vehicle.

14. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

15. **Self-Defense.** The choice of evils defense requires that a defendant (1) acts to avoid a greater harm; (2) reasonably believes that the particular action is necessary to avoid a specific and immediate harm; and (3) reasonably believes that the selected action is the least harmful alternative to avoid the harm, either actual or reasonably believed by the defendant to be certain to occur.

Appeal from the District Court for Kearney County, Terri S. Harder, Judge, on appeal thereto from the County Court for Kearney County, Michael P. Burns, Judge. Judgment of District Court affirmed.

Kevin K. Knake, of Law Office of Richard L. Alexander, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, and KELCH, JJ.

HEAVICAN, C.J.

## I. NATURE OF CASE

In the early morning hours of January 17, 2014, Officer Jarvis Kring of the Minden, Nebraska, police department discovered Bruce V. Rask asleep in the cab of his running pickup truck. Rask was charged, among other offenses, with driving under the influence (DUI), third offense, in the county court for Kearney County. A jury convicted Rask of DUI, and, on appeal, the district court for Kearney County affirmed. Rask appeals to this court. We affirm.

## II. BACKGROUND

According to evidence presented at trial, on January 16, 2014, Rask got off work around 11:30 p.m. to midnight. He procured a 12-pack of Bud Light beer before leaving work. Rask then picked up his friend, Carson Corr. They drove to the home of another mutual friend, where Rask and Corr each had one or two beers. Rask and Corr stayed at the friend's house until approximately 1 a.m.

Afterward, Rask drove Corr back to Corr's residence. Rask and Corr testified at trial that Rask was not impaired during the drive back to Corr's house. However, Kring testified that Rask had admitted that he got drunk before returning to Corr's home.

Rask testified that he left the engine of his pickup truck running because it was cold outside. He claims he did not pull into Corr's driveway, because he did not want to wake Corr's dogs and parents. Rask and Corr then sat in the vehicle until about 3 a.m., talking and drinking. Rask and Corr testified that they finished all but one beer out of the 12-pack of Bud Light. There is conflicting evidence in the record, but

it appears that Rask had between four and six beers. Corr allegedly took the last bottle into his home when he left, along with all the empty bottles. Rask testified that he did not touch any controls of the truck while sitting in front of Corr's residence.

After Corr left, Rask decided to sleep in his truck. He alleges that he believed sleeping in his truck was the right thing to do because he did not want to get in trouble for driving drunk. Additionally, Rask testified that even though he was friends with Corr's parents, he did not go into Corr's home because he did not want to wake anybody. However, Kring testified that Rask later stated he did not go inside because he had had an argument with Corr. In any event, according to Rask, he had no feasible alternatives to sleeping in his running truck.

Around 4:40 a.m. on January 17, 2014, Kring was on duty and drove past Rask's truck while on patrol. At about 5:25 a.m., Kring drove past again and this time noticed an elbow visible through the window, so he stopped to investigate. He saw Rask, whom Kring recognized, asleep in the driver's seat. Eventually Kring was able to rouse Rask by yelling his name through the partially open passenger-side window.

Rask admitted to Kring that he was drunk. Additionally, Kring noticed a "koozie" between Rask's feet, containing what was later discovered to be a mostly empty Miller Lite beer can. Corr testified at trial that he left this can in Rask's truck sometime before January 16, 2014. Kring did not find any other alcohol containers in or around the truck.

Kring administered three field sobriety tests, each of which Rask was unable to successfully complete. Kring testified at trial that Rask also smelled of alcohol. Kring also administered a preliminary breath test (PBT). The results of the PBT were not offered at trial. After the PBT, Kring asked Rask whether he would submit to a chemical blood test; Rask refused. Kring testified at trial that during this interaction, Rask became angry, kicking his truck and using expletives.

The State charged Rask with three offenses: DUI, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010); refusal to submit to a chemical test, in violation of Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2014); and possession of an open alcohol container. The second count, refusal to submit to a chemical test, was dropped by the State after a "problem" was discovered. In his brief, Rask asserts the "problem" was that Kring failed to give Rask a proper advisement required under § 60-6,197. The record does not explicitly indicate the nature of the so-called problem, but there is no evidence that Kring gave the advisement.

A jury found Rask guilty of the DUI charge, for which the county court sentenced Rask to 180 days' imprisonment, a $1,000 fine, and a 15-year suspension of his driver's license. The county court also found Rask guilty of possession of an open alcohol container and fined Rask $100 for that infraction—a conviction from which Rask does not appeal.

## III. ASSIGNMENTS OF ERROR

Rask assigns, restated and renumbered, that (1) the county court erred by admitting evidence that Kring performed a PBT, (2) the county court erred by admitting evidence that Rask refused to submit to a chemical blood test, (3) the State committed prosecutorial misconduct by introducing evidence of the PBT and the refusal, (4) the county court erred in denying Rask's motion for a mistrial, (5) the county court erred by giving a misleading jury instruction on the definition of "actual physical control of a motor vehicle," and (6) the county court erred by failing to give the jury instruction on choice of lesser harm.

## IV. STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.[1]

---

[1] *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015).

[2] In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt.[2]

[3] In a harmless error review, an appellate court looks at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the guilty verdict rendered in the trial was surely unattributable to the error.[3]

[4] Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.[4]

## V. ANALYSIS

### 1. Motion in Limine

Rask's first four assignments of error concern the admission of evidence that Kring performed a PBT and that Rask refused to submit to a chemical blood test. Before trial, Rask filed a motion in limine to exclude all evidence concerning the PBT and his refusal. The county court partially granted the motion, excluding only the results of the PBT. Rask objected to all evidence concerning the tests at trial, and also moved for a mistrial on this basis.

### (a) Evidence of PBT

[5] In Rask's first assignment of error, he argues that evidence he performed a PBT was inadmissible. As a general rule, PBT evidence is inadmissible as proof that a defendant

---

[2] *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013).

[3] *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

[4] *State v. Edwards*, 286 Neb. 404, 837 N.W.2d 81 (2013).

was impaired or intoxicated; this court has repeatedly limited the admissibility of the results of a PBT to the purpose of showing probable cause either for an arrest or for administering a chemical test.[5] Neither of these issues is contested in this case.

In *State v. Green*,[6] as in the present case, the State had offered evidence that a PBT was administered and that the defendant was arrested after taking the test. This court questioned whether it was error to admit evidence that a PBT was administered, as distinct from the results of that PBT.[7]

But without answering that question, we found harmless error. In *Green*, the State had also presented the arresting officer's testimony that the defendant failed field sobriety tests.[8] Therefore, the verdict was not attributable to the fact that a PBT was administered.

We also find that any error in this case was harmless. At trial in this case, Rask did not contest that he was drunk at the time Kring administered the PBT. There was ample evidence to support this fact. Rask and Corr both testified that Rask had consumed approximately five to seven beers between 1 and 3 a.m., Rask admitted to Kring that he was drunk, Rask failed three different sobriety tests, and he smelled of alcohol. Considering all of this undisputed testimony, the jury's verdict is unattributable to the admission of the mere fact that Rask took a PBT, and any error by the district court in admitting such evidence is harmless.

Rask's first assignment of error is without merit.

---

[5] See, e.g., *State v. Scheffert*, 279 Neb. 479, 778 N.W.2d 733 (2010) (concerning defendant's challenge to probable cause for arrest); *State v. Green*, 223 Neb. 338, 389 N.W.2d 557 (1986); *State v. Klingelhoefer*, 222 Neb. 219, 382 N.W.2d 366 (1986).

[6] *Green, supra* note 5.

[7] *Id.*

[8] *Id.* See, also, *Klingelhoefer, supra* note 5; *State v. Smith*, 218 Neb. 201, 352 N.W.2d 620 (1984).

(b) Evidence of Refusal

In Rask's second assignment of error, he argues the county court erred by admitting evidence that Rask refused to submit to a chemical blood test. Rask alleges that Kring did not advise Rask refusal was a separate crime and, therefore, that his refusal was inadmissible for any purpose. Upon our de novo review, interpreting § 60-6,197, we find no error.

Under § 60-6,197(1), "[a]ny person who operates or has in his or her actual physical control a motor vehicle . . . shall be deemed to have given his or her consent to submit to a chemical test . . . ." Refusal to submit to a chemical test is a crime. Section 60-6,197 also states:

> (5) Any person who is required to submit to a chemical blood, breath, or urine test or tests pursuant to this section shall be advised that refusal to submit to such test or tests is a separate crime for which the person may be charged. Failure to provide such advisement shall not affect the admissibility of the chemical test result in any legal proceedings. However, failure to provide such advisement shall negate the state's ability to bring any criminal charges against a refusing party pursuant to this section.

> (6) Refusal to submit to a chemical blood, breath, or urine test or tests pursuant to this section shall be admissible evidence in any action for a violation of section 60-6,196 . . . .

Though Rask was convicted of DUI under § 60-6,196, he asks us to find that subsection (6) is limited to properly advised, informed refusals.

In *State v. Christner*,[9] this court found that chemical test *results*—not refusals—should be excluded when the defendant was not properly advised of the consequences of refusal. The version of § 60-6,197 then applicable had language

---

[9] *State v. Christner*, 251 Neb. 549, 557 N.W.2d 707 (1997), *overruled on other grounds, State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000).

nearly identical to the language of subsection (6) now in effect, but did not include the portion of subsection (5) stating that the "[f]ailure to provide [an] advisement shall not affect the admissibility of the chemical test result in any legal proceedings."[10]

[6,7] In light of this revision, we find that our holding in *Christner* does not apply to the present version of § 60-6,197. The plain language of subsection (5) contradicts our holding in *Christner*; chemical test results are admissible in all legal proceedings, even if that chemical test was administered without the proper advisement. Furthermore, based upon subsections (5) and (6), as well as public policy, we hold that § 60-6,197 permits evidence of refusal to prove DUI charges, even when the defendant was not properly informed that refusal is a separate crime.

[8] In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning.[11] And the plain language of the statute supports this finding. While § 60-6,197 clearly bars prosecution for the crime of refusal if the defendant was not properly informed, the statute does not specifically address the admissibility of uninformed refusals in DUI cases. Instead, subsection (6) is a broad rule, without exception—it states only that a refusal is admissible to prosecute a DUI. We hold that under this broad rule, even uninformed refusals to submit to a chemical test are admissible for the purpose of proving DUI charges.

Further, subsection (5), permitting the admission of uninformed chemical test *results*, suggests that whether a refusal or submission to a chemical test was informed bears only upon the ability of the State to bring charges against the defendant for said refusal; those results are still admissible to prove the elements of a DUI charge. It is illogical to admit the results of a chemical test to prove a DUI where the defendant was

---

[10] See § 60-6,197(10) (Reissue 1993).

[11] *State v. Loyd*, 275 Neb. 205, 745 N.W.2d 338 (2008).

uninformed, but to exclude the defendant's refusal to take that same, uninformed, chemical test.

[9] Public policy bolsters this reading. This court considered the relevance of refusals in DUI cases in *State v. Meints*.[12] In that case, we determined that a defendant's refusal to submit to a chemical test was evidence of circumstances surrounding the DUI charge—it showed the "defendant's conduct, demeanor, statements, attitudes, and relation toward the crime."[13] These facts are equally relevant where a defendant's refusal is informed.

In the present case, Kring testified about Rask's refusal to submit to a chemical test in the context of Rask's behavior and attitude at the time of his arrest. This information was relevant to the DUI charge against Rask.

For these reasons, Rask's second assignment of error is without merit.

### (c) Prosecutorial Misconduct and Mistrial

In Rask's third and fourth assignments of error, he argues that as a result of the evidence of the PBT and his refusal to submit to a chemical test, the State committed prosecutorial misconduct and the county court erred by denying his motion for a mistrial. Finding no merit to Rask's contention that this evidence was wrongly admitted, we decline to further address his third and fourth assignments of error.

### 2. JURY INSTRUCTIONS

In Rask's fifth and sixth assignments of error, he asserts that two of the given jury instructions were incorrect. After the close of evidence at trial, Rask objected to jury instructions Nos. 3 and 4. Specifically, he argued that instruction No. 4

---

[12] *State v. Meints*, 189 Neb. 264, 202 N.W.2d 202 (1972).

[13] *Id.* at 266, 202 N.W.2d at 203.

incorrectly defined "actual physical control of a motor vehicle" and that instruction No. 3 should have required the State to prove that Rask was not avoiding greater harm by choosing to sleep in his truck.

[10] It is the duty of a trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the omission of certain elements have the effect of withdrawing from the jury an essential issue or element in the case are prejudicially erroneous.[14] Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.[15]

In his brief, Rask also asserts that the county court's instructions on the definitions of "intoxication" and "under the influence of alcoholic liquor" were "confusing and contradictory."[16] He further argues that the definition of "operate" was irrelevant and confusing to the jury. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[17] Because Rask does not assign as error the giving of these instructions, we need not discuss this argument further.

(a) Actual Physical Control
of Motor Vehicle

In Rask's fifth assignment of error, he argues that the county court erred by instructing the jury that "actual physical control of a motor vehicle" means "one present in a

---

[14] *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002).

[15] *Edwards, supra* note 4.

[16] Brief for appellant at 11.

[17] *State v. Cook*, 290 Neb. 381, 860 N.W.2d 408 (2015).

motor vehicle directing influence, dominion or regulation thereof." We find that the definition provided to the jury was adequate.

[11] This court has not defined "actual physical control of a motor vehicle." Rask cites no case law holding that the definition in instruction No. 4 was incorrect or offers an alternative instruction. The entirety of his argument on appeal is that the definition was "conclusory and nonsensical" because it permitted the jury to believe that sleeping in the driver's seat of a parked, running vehicle constitutes actual physical control.[18] We now hold that on these facts, where a person sits in the driver's seat of a motor vehicle with the engine running, parked on a public road, that person has actual physical control of that motor vehicle.

[12] Among jurisdictions with similar DUI statutes, there does not appear to be a bright-line rule for what constitutes actual physical control. However, a number of these jurisdictions have held that the use of the phrase "actual physical control" exhibits a legislative intent to prevent persons under the influence of drugs or alcohol from creating dangerous conditions on public roadways.[19] The word "or," when used properly, is disjunctive.[20] Therefore, these courts have determined that to have "actual physical control" must mean something other than to "operate." Thus, they interpret "actual physical control" broadly to address the risk that a person not yet operating a motor vehicle might begin operating that vehicle with very little effort or delay.

We agree with the reasoning of these jurisdictions. Section 60-6,196(2) states that "[a]ny person who operates *or* is in the actual physical control of any motor vehicle while [under the

[18] Brief for appellant at 11.

[19] See, e.g., *Atkinson v. State*, 331 Md. 199, 627 A.2d 1019 (1993); *State v. Smelter*, 36 Wash. App. 439, 674 P.2d 690 (1984) (citing *State v. Schuler*, 243 N.W.2d 367 (N.D. 1976)).

[20] *State v. Thacker*, 286 Neb. 16, 834 N.W.2d 597 (2013).

influence of drugs or alcohol] shall be guilty of a crime . . . ."
(Emphasis supplied.) The acts of starting or driving a vehicle
fall within the definition of "operate"; thus, we determine that
the Legislature intended "actual physical control" to describe
acts short of starting or driving a vehicle.

[13] Considering the policy purpose and disjunctive lan-
guage of the statute, we hold that "actual physical control of a
motor vehicle" may be adequately defined as "directing influ-
ence, dominion, or regulation of a motor vehicle." Other juris-
dictions have accepted similar definitions.[21] We do not suggest
that this is the only correct definition of the term, or that it is
most correct; rather, we find that in this case, the district court
did not err in giving that definition.

In other jurisdictions, courts have looked to a number of
factors to determine whether a defendant was in actual physi-
cal control of a motor vehicle, including: whether the key was
in the ignition or in the defendant's possession, whether the
engine was running, whether the vehicle was parked away from
traffic, and whether the defendant was awake or asleep.[22]

Looking to the factors used in other jurisdictions, and the
preventative nature of the statute, we find that Rask was in
actual physical control of a motor vehicle. Rask admits that
he became intoxicated while sitting in the driver's seat of his
truck, with the keys in the ignition and the engine running,
while parked on a public roadway. Rask could have easily
and nearly instantaneously begun operating the truck, plac-
ing any surrounding people and property in peril. These facts

---

[21] See, e.g., *Griffin v. State*, 457 So. 2d 1070, 1072 (Fla. App. 1984)
("'[d]efendant must have had the capability and power to dominate, direct
or regulate the vehicle, regardless of whether or not he is exercising that
capability or power at the time of the alleged offense'"); *State v. Ruona*,
133 Mont. 243, 248, 321 P.2d 615, 618 (1958) ("[u]sing the term in 'actual
physical control' in its composite sense, it means 'existing' or 'present
bodily restraint, directing influence, domination or regulation'").

[22] See, e.g., *State v. Robison*, 281 Mont. 64, 931 P.2d 706 (1997); *Atkinson,
supra* note 19; *Schuler, supra* note 19; *Griffin, supra* note 21.

fall within the purpose and language of § 60-6,196. Numerous jurisdictions would concur with this result.[23]

Rask's fifth assignment of error is without merit.

### (b) Choice of Lesser Harm

Finally, Rask asserts the county court erred by refusing his request to add an element to the DUI instruction requiring the State to prove Rask was not acting to avoid greater harm. We find no error in the county court's failure to so instruct the jury.

[14] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[24]

Although Rask requested the instruction as a negative element of the DUI charge, choice of lesser harm, or "justification," is an affirmative defense; the defendant bears the initial burden of going forward with evidence of the defense.[25] Where the record shows there is no legally cognizable defense of justification, the issue will not be submitted to the finder of fact.[26] Therefore, we consider whether Rask produced sufficient evidence to warrant presentation of a choice of evils instruction to the jury.

[15] The choice of evils defense requires that a defendant (1) acts to avoid a greater harm; (2) reasonably believes that the particular action is necessary to avoid a specific and immediate harm; and (3) reasonably believes that the selected

---

[23] See, e.g., *State v. Godfrey*, 137 Vt. 159, 400 A.2d 1026 (1979); *State v. Woolf*, 120 Idaho 21, 813 P.2d 360 (Idaho App. 1991); *Richfield City v. Walker*, 790 P.2d 87 (Utah App. 1990); *Griffin, supra* note 21.

[24] *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

[25] See *State v. Wells*, 257 Neb. 332, 598 N.W.2d 30 (1999).

[26] *Id.*

action is the least harmful alternative to avoid the harm, either actual or reasonably believed by the defendant to be certain to occur.[27]

Rask claims that he acted to avoid the greater harm of freezing to death while walking across town to get home. Even assuming that there was a real risk that Rask might die or become seriously injured from the cold, his argument fails.

Even if Rask had no less harmful alternative to sleeping in his truck, he had already committed DUI before falling asleep. As discussed above, Rask was in actual physical control of a motor vehicle when he sat in the driver's seat of his truck with the keys in the ignition and the engine running, parked on a public street. The crime, then, took place before Rask resorted to sleeping in the truck. Rask chose to get drunk in his truck, rather than deciding to remain sober or arrange to drink in another location. Thus, the instruction was not warranted by the evidence and Rask suffered no prejudice from its omission.

Rask's final assignment of error is without merit.

## VI. CONCLUSION

We affirm the decision of the district court affirming Rask's conviction.

AFFIRMED.

Connolly, J., not participating.

---

[27] *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003).