STATE OF MAINE *vs*. ROYDEN V. BROWN.

Kennebec.     Opinion, January 8, 1946.

*Henry Heselton*, County Attorney,

*Abraham Breitbard*, Deputy Attorney General, for the State.

*Burleigh Martin*,

*F. Harold Dubord*, for the respondent.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, TOMPKINS, JJ.

THAXTER, J.   The respondent was indicted for a violation of the provisions of R. S. 1944, Chap. 121, Sec. 6, in that, being more than twenty-one years of age, he took indecent liberties with the sexual parts or organs of one John N. McAuley, Jr., a male child under the age of sixteen years. On a trial before a jury in the Superior Court he was convicted, and the case is before us on an appeal from a denial by the presiding justice of his motion for a new trial and on exceptions. It is unnecessary to consider the appeal, for the exceptions must be sustained.

The exceptions are to the overruling by the presiding justice of a motion in arrest of judgment, to the exclusion of certain evi-

dence, to a portion of the charge as given, to the failure of the presiding justice in his charge to digest the defense testimony in as great detail as he had digested the evidence for the state, and to the refusal to give certain requested instructions.

The motion in arrest of judgment is without merit and was properly overruled. The only objection to the indictment brought up by the motion and now insisted on is that the indictment does not contain an allegation that the respondent committed an assault on the said John N. McAuley, Jr. An assault is not, however, a necessary element of the offense, and accordingly such an allegation in the indictment was not required.

It is not necessary to consider the exceptions to the exclusion of evidence or to the portion of the charge complained of.

There is considerable force in the respondent's complaint that the summation of the evidence by the presiding justice was one-sided in that attention was called unduly to the testimony favorable to the state and but little comment was made on that of the respondent. The law is well settled that, if a trial judge sees fit to summarize the evidence for jury's benefit, he must do so with strict impartiality and must not "magnify the importance of the proofs on one side and belittle those on the other." . . . *Com.* v. *Colandro*, 231 Pa., 343, 356, 80 A., 571, 576; *Com.* v. *Westley*, 300 Pa., 16, 150 A., 94; *Com.* v. *Karmendi*, 325 Pa., 63, 188 A., 752; 23 C. J. S. P., 896, *et seq.* In a case of this kind where, because of the nature of the offense charged, resentment is apt to run high, where there is likely to be indignation in a community against the accused, a heavy responsibility rests upon a judge to see to it that the members of a jury are in a temperate frame of mind and that they consider the evidence offered impartially and without bias toward a respondent. To that end it is more than ever essential, if the evidence for the state is summarized, that the evidence for the respondent and its bearing on the issue should be given equal consideration.

In this case the only direct evidence was that of the young boy who was the victim of the advances claimed to have been made

by the respondent. He testified that as the respondent passed in the early evening with his wife along the lower corridor of the State House and by the open door of a room which had been used as a kitchen, which was dark except for such light as came from the corridor, the respondent lured him into this room on a pretense and there committed the offense. If such were the fact, the wife obviously continued on her way, and the state offered evidence of the operator of the elevator that on the evening in question she rode alone in the elevator to the floor on which the respondent's office was located. The respondent, according to the elevator operator, followed shortly afterwards. Whatever happened was over in a very few minutes. The respondent continued with his duties for three days as secretary of the senate which was then in session, when he was called to the office of the attorney general and there placed under arrest. Testimony of Captain Young of the state police and of the sheriff of the county was offered of the conversations which they had with him there. There is no evidence and no claim is made that what he there said was not voluntary. The interpretation to be put on certain of the admissions which he made to the officers depends very largely on the weight which the trier of the facts would give to the testimony of the boy. In one aspect what he said to the officers might indicate guilt, in another innocence. It was, therefore, of the utmost importance that this evidence should have been weighed in its relation to the whole and not treated as isolated testimony supporting the charge. The evidence for the respondent was the testimony of himself and his wife. In view of the alleged circumstances, it was obviously all he had. He denied that he went into the abandoned kitchen with the boy or committed the act in question. He did admit giving the boy a friendly push as he passed by him. His wife says that she and her husband walked through the corridor together and took the elevator together to the upper floor, that he unlocked the door of his office for her, and that they went in there together. Obviously the whole case hinged on the proper evaluation by the jury of the testimony of the boy

on the one hand and of the respondent and his wife on the other.

Such being the case, what does the charge say with reference to the testimony for the state and for the respondent?

In the first place, the court told the jury that the witnesses for the state "all of them" had no choice but to testify, that they had to come and tell their story, that they stood "to gain or lose nothing by that action, one way or the other." The judge comments on the great importance of the testimony of the boy. To the claim of the defense that it is untrue, the judge says: "If he is not telling the truth, why not? Well, defense counsel say it is not necessary to prove motive to show why a witness should lie. I think you probably, as reasonable men of good sound judgment would say, 'Why should anyone lie if there is no reason for it?' " There is more in a similar vein later on. As to the boy's attitude on the stand, the judge again calls attention to the fact that he had to testify whether he wanted to or not. As to why the boy did not cry out then and there we find this comment: "There has been testimony and it has been said that there was opportunity for the boy that evening to cry out to his father for help. Again it might be proper for you, Mr. Foreman and members of the panel, to determine how a young man of that age who had no such experience before, would react under the circumstances which you found to have existed that night; and when he was asked why he didn't cry out to his father, his reply was, 'I was afraid.' You take that and give it the consideration it deserves and see who is telling the truth." Then the judge read to the jury long excerpts from the testimony of Captain Young as to his conversation with the respondent, coupled with this comment obviously directed to the weight to be given to such testimony: "Officers are chosen by the proper authorities supposedly because of their qualifications and their honesty to enforce the laws of the State to protect the persons and the citizens of this State." And then as to both Captain Young and the sheriff, we find this: "Do you believe that Officer Young is not telling the truth as to what happened at noon on March 9th? Do you believe the chief enforcement officer of

this county, elected by the people of this county, is not telling the situation as it is when he corroborates Mr. Young? Do you believe, Mr. Foreman and members of the panel, that these officers are influenced by any other desire than to come in and tell you the truth as they see it and as they understand it, or are they the type of officers, as argued by the defense, who come in here to get a conviction, no matter what? It is for you to say."

The summary by the court of the testimony for the state and the suggestions, largely in question form to be sure, on the weight to be given to it cover six pages of the record. The summary of the defense testimony is comprised within six lines to the effect that the respondent denies the charges and is corroborated by his wife, who says that "she did not leave his presence from the time they left the car until they reached the room upstairs." Then follows this comment on the weight to be given to the testimony of the respondent and his wife: "I have said to you, but I do not know as I have in this charge, sometimes in determining the truth of a statement given by an individual, it is very helpful to determine the interest in the case. It doesn't necessarily mean that one who is interested will deliberately commit perjury, but it might occur to you that one who is interested in the outcome would try to tell that story he thought would be helpful. I say his interest is something for you to consider and the interest of any witness. Is he interested in the outcome of the case? The other witness who testified for him is his wife. Is she interested in the outcome of the case? She is his wife. She may not be interested, but is she? If she is, does it tend to color her testimony? These are all matters for you to consider."

We have here in this charge a summary of the testimony and the weight to be given to it heavily balanced in favor of the state. Particularly damaging was calling attention to the compulsion on the part of the prosecution's witnesses to testify, as compared with the voluntary character of the testimony for the defense. Then there is an obvious attempt to suggest the honesty of the law enforcement officers, as distinguished from the interest of the

respondent and his wife. We do not believe that such damage is cured by telling the jury that they are the judges of the facts, by platitudes against prejudice, racial or otherwise, nor merely because the matter is put to the jury in the form of questions. The constant reiteration of a question may become in effect an affirmation. Our statutes, R. S. 1944, Chap. 100, Sec. 105, forbid a judge during a trial, including the charge, to express an opinion on issues of fact. What he is forbidden to do directly, he may not do indirectly.

It is not necessary for us to decide whether this respondent should, under the rule set forth in *State* v. *Wright*, 128 Me., 404, 148 A., 141, be granted a new trial because of the partiality shown by the presiding justice in his summary of the evidence; for a new trial must be granted because of the failure to give a requested instruction. We call attention to the charge as given because of the cumulative effect of it on the failure to instruct properly on this other point.

The respondent requested the following instruction:

"The jury is instructed that the law presumes the innocence of a person accused of crime, and this presumption is not a matter of form merely, that the jury may disregard at pleasure, but is a part of the law of the land and is a right guaranteed by that law to every person accused of crime. This presumption of innocence continues with the defendant throughout all the stages of the trial, and until the case has been finally submitted to the jury, and the jury has found that this presumption has been overcome by the evidence of the prosecution beyond a reasonable doubt as to each and every material fact.

"If after carefully considering all the evidence, you have any reasonable doubt as to the guilt of the respondent, then it is your duty to resolve that doubt in favor of the respondent and render a verdict of acquittal."

This instruction should have been given unless the matter had been covered in the charge. It not only had not been covered, but the charge as given could well have given the jury an altogether wrong impression of the law on this fundamental point. The presiding justice said:

"In cases such as this, criminal cases, it has been well said the respondent is presumed to be innocent. That means this, Mr. Foreman and members of the panel, that until there is evidence produced in Court there is no presumption of guilt. On the other hand, there is the presumption of innocence. The mere fact that proceedings were instituted, the mere fact there was a hearing in Municipal Court, the mere fact the case was investigated by officers of the law, the mere fact he was finally indicted by the Grand Jury, the mere fact he is placed in this court room for trial doesn't militate against him in the least. It is not to be considered at all in establishing his guilt."

The jury could have understood from this that, when the case opened and the state commenced to put in its case, the presumption of innocence was gone. Just what was meant by "presumption of guilt" is not clear, but it is a dangerous phrase. The judge calls attention to the fact that the hearing in the Municipal Court, the investigations by the state officers, the indictment, the bringing of the respondent to trial, do not affect the presumption of innocence. This admonition was of course proper, but these were all preliminary procedures to the opening of the case by the state when the judge implies the presumption of innocence no longer exists. Nowhere is the jury specifically told that the presumption of innocence remains until the jury is satisfied from all the evidence in the case that the respondent is guilty beyond a reasonable doubt. It is true that subsequently the judge did say that the presumption remains until there is evidence to overcome it but we do not think that this statement alone clarifies for the jury what was said before. Taken in connection with the one-

sided summary of the evidence in the case, we think the charge as given on this point was highly prejudicial. For this reason it was more than ever important that the requested instruction should have been given. The failure to give it under the circumstances constitutes reversible error.

We do not grant a new trial in this case because of mere technical errors. What happened here was fundamental. We express no opinion as to whether the evidence in this record would sustain the verdict. Regardless of what our decision might be on that point, this man was entitled to a fair and impartial trial. That, he did not have.

*Exceptions sustained.*
*New trial granted.*