Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/31/2021 08:09 AM CDT

State of Nebraska, appellee, v.
Timothy Hoops, appellant.
___ N.W.2d ___

Filed August 24, 2021.    No. A-20-547.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.

2. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.

3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

4. **Criminal Law: Courts: Appeal and Error.** When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court.

5. **Criminal Law: Juries: Evidence: Appeal and Error.** In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt.

6. **Verdicts: Juries: Appeal and Error.** In a harmless error review, an appellate court looks at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict surely would have been rendered, but, rather, whether the guilty verdict rendered in the trial was surely unattributable to the error.

7. **Trial: Appeal and Error.** Conduct of final argument is within the discretion of the trial court, and absent an abuse of that discretion, the trial court's ruling regarding final argument will not be disturbed.

8. **Appeal and Error.** The function of assignments of error is to set out the issues presented on appeal, to advise the appellee of the question submitted for determination so the appellee knows what contentions must be met, and to advise the appellate court of the issues submitted for decision.

9. **Courts: Judgments: Appeal and Error.** In appeals from the district court sitting as an appellate court, the immediate question is whether the district court erred in its appellate review of the county court's decision, but review of that question necessarily involves considering the decision of the county court.

10. **Blood, Breath, and Urine Tests: Evidence: Proof: Probable Cause.** As a general rule, preliminary breath test evidence is inadmissible as proof that a defendant was impaired or intoxicated; the admissibility of the results of a preliminary breath test is limited to the purpose of showing probable cause either for an arrest or for administering a chemical test.

11. **Trial: Arrests: Blood, Breath, and Urine Tests: Evidence.** The admissibility of the preliminary breath test is a question of law and should therefore be admitted into evidence out of the presence of the jury.

12. **Trial: Attorneys at Law: Evidence.** It is improper for counsel to comment during closing argument on matters unsupported by the evidence.

13. **Trial: Proof: Appeal and Error.** To establish reversible error, a defendant must demonstrate that a trial court's conduct, whether action or inaction during the proceeding against the defendant, prejudiced or otherwise adversely affected a substantial right of the defendant.

Appeal from the District Court for Scotts Bluff County, Leo P. Dobrovolny, Judge, on appeal thereto from the County Court for Scotts Bluff County, Kris D. Mickey, Judge. Judgment of District Court affirmed.

Bell Island, of Island Law Office, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Pirtle, Chief Judge, and Moore and Bishop, Judges.

Bishop, Judge.

## INTRODUCTION

Timothy Hoops was found guilty by a jury in the county court for Scotts Bluff County for driving under the influence

of alcohol. The county court accepted that verdict and also found Hoops guilty of making an improper turn. On appeal to the Scotts Bluff County District Court, his convictions and sentences were affirmed. On appeal to this court, Hoops assigns errors related to testimony regarding a preliminary breath test and an objection made by the State during defense counsel's closing argument. We affirm.

## BACKGROUND

On February 18, 2017, Officer Matthew Brown of the Scottsbluff Police Department was on night patrol when he observed a vehicle make an improper right turn into the outside lane and strike the median island during the turn. Officer Brown thereafter initiated a traffic stop and followed the vehicle into a nearby parking lot where he identified Hoops as the driver of the vehicle. The events leading up to the traffic stop and the ensuing investigation were recorded by Officer Brown's cruiser camera, and that recording was introduced as evidence at trial.

When Officer Brown first made contact with Hoops, he "noticed [Hoops] had bloodshot, watery eyes, slurred speech, and . . . an odor of an alcoholic beverage coming from his person." Officer Brown testified that Hoops admitted to having "had at least three alcoholic beverages at a business meeting" prior to the traffic stop, and he recalled that Hoops had said those beverages were "beer." Officer Brown then had Hoops step out of the vehicle, and he recalled that as Hoops "first stepped out of [the] vehicle[,] he stumbled and then kind of caught himself on the door and then stood back up."

When bringing Hoops to the space in front of his cruiser, Officer Brown asked "if [Hoops] would be willing to do the standardized field sobriety tests," and Hoops consented. Now in proximity, Officer Brown noted he could detect "the smell . . . of the alcoholic beverage coming from [Hoops] and his breath at that point" and affirmed that he had a "clearer view of [Hoops'] bloodshot, watery eyes." The first test was the

horizontal gaze nystagmus test, and Officer Brown observed Hoops "kind of leaning and then swaying back and forth" during the test. Officer Brown further testified that Hoops "was moving his head, turning his head from side to side" during the test despite instructions and "several" reminders that Hoops was "to follow [Officer Brown's] pen with [his] eyes only." Moving away from the cruiser to an area with more level ground, Officer Brown then had Hoops perform the nine-step walk-and-turn test. Hoops made two attempts before declining to continue with the test, and he was not able to complete either attempt due to losing his balance and stepping off the line within the first few steps of each attempt. Returning to the front of the cruiser, Officer Brown then had Hoops perform the one-leg stand test. Hoops was unable to keep his balance for more than a few seconds during his attempts before becoming unsteady and subsequently catching himself on the hood of Officer Brown's cruiser. Officer Brown thereafter administered a preliminary breath test to Hoops. Officer Brown observed Hoops to be "swaying" at multiple points throughout the encounter, but recalled that Hoops said during the stop that "he had back problems" and "knee problems." Officer Brown then placed Hoops under arrest, believing him to be impaired.

The State filed a complaint on March 14, 2017, and subsequently filed an amended complaint on March 18, 2019, charging Hoops with making an improper right turn in violation of Neb. Rev. Stat. § 60-6,159(1) (Reissue 2010) and driving under the influence of alcohol, first offense, in violation of Neb. Rev. Stat. § 60-6,196(1)(a) (Reissue 2010).

A jury trial was held on April 25, 2019. During Officer Brown's testimony, the following colloquy took place on direct examination between counsel for the State and Officer Brown concerning the signs of impairment he was trained to look for:

> Q. All right. And what kind of things do you see from somebody who is impaired? What are some things you know to look for?

A. Things we know to look for, slurred speech, confusion, unsteady on their feet, stumbling.

Q. Could a flushed face be one of those things?

A. Yes.

Q. Is that the biggest thing you look for?

A. No.

Q. Does every person who's intoxicated have a flushed face?

A. No, they do not.

Q. Okay. It — that's not the number one thing or anything like that?

A. No.

Q. All right. Does everybody react the same when they're impaired that you have dealt with?

A. No, they do not act — everyone does not act the same.

Q. Does everybody present the same? Like, do you constantly see one thing in particular?

A. No. It's — it could be a number of things.

Officer Brown later described that the basis for his opinion of Hoops' impairment "was the standardized field sobriety tests, [his] observations, and the clues of impairment [he] observed, and the odor of the alcoholic beverage coming from [Hoops'] person and then the preliminary breath test and DataMaster." Hoops' counsel objected and moved to strike that testimony, and the county court overruled the objection and motion to strike.

During cross-examination, Hoops' counsel asked additional questions regarding the signs of impairment Officer Brown was trained to look for. The following exchange took place between Hoops' counsel and Officer Brown regarding a flushed face as a sign of a person's impairment by alcohol:

Q. You're also trained to look at, like, the impact of alcohol on the body that we talked about earlier. Do you remember that?

A. Yes.

Q. That it — that it's — causes the blood vessels to dilate or to heat up; right?

A. Yes, sir.

Q. And that's what causes the flushed face?

A. Correct.

Q. And with . . . Hoops we didn't see any flushed face; right?

A. Not that I remember.

Q. Right?

A. Correct.

Following the close of evidence, Hoops' counsel made the following statement during his closing argument:

And one thing that's missing — and this is important because when you're impaired, when you consumed alcohol, he's taught it dilates the — the vessels. It makes your face get red. It makes it become flushed. It makes it become heated. That is something that's consistent with someone who would be impaired by alcohol, would be there.

The State objected on the basis that Hoops' counsel asserted "[f]acts not in evidence." The court sustained the objection, and closing arguments thereafter continued to conclusion.

The jury returned a verdict finding Hoops guilty of driving under the influence of alcohol. The county court accepted the jury's verdict and further found Hoops guilty of making an improper right turn. A sentencing order was entered on June 3, 2019. For his conviction for driving under the influence of alcohol, first offense, the court sentenced Hoops to 6 months' probation, revoked his driver's license for 60 days, and imposed a $500 fine. For Hoops' conviction for making an improper right turn, the court imposed a $25 fine.

Hoops thereafter appealed to the district court. On June 6, 2019, Hoops filed an assignment of errors with the district court alleging that "[t]he court erred in admitting evidence at trial" and "[t]here was insufficient evidence." A hearing before the district court took place on March 20, 2020.

Subsequently, on April 22, Hoops filed an amended assignment of errors alleging that "[t]he court erred in admitting the evidence of a Preliminary Breath Test at trial" and "[t]he court erred in sustaining the Government's objection during the Defense closing."

On July 8, 2020, the district court entered an order affirming Hoops' convictions and sentences. Regarding Hoops' allegations about Officer Brown's testimony relating to the preliminary breath test, the court noted the results of the test were not provided to the jury and determined the test result known to Officer Brown "was only a component of his reasoning that Hoops was impaired." The court found that "[e]ven if the passing mention of a [preliminary breath test] would be considered error, it is harmless," reasoning that there was "ample evidence of impairment with no consideration of a [preliminary breath test] being administered" based upon the jury's requests to view the cruiser camera footage during deliberation. The court also found no error in the county court's sustaining of the State's objection during closing arguments, noting:

> The Court finds no error in the trial judge['s] sustaining of the objection. While one could consider a legitimate deduction from the evidence to be that an impaired driver could have a red face, the evidence does not support an observation or deduction that an impaired person must have a red face.
>
> . . . .
>
> The only action taken by the trial judge was to utter the word "sustained"; no comments of defense counsel were ordered stricken or to be disregarded, and defense counsel went on to basically restate what had already been objected to, without further objection, or comment from the Court.

The court further found there was "no indication of [prejudice]" caused by the trial judge's sustaining of the State's objection.

Hoops then appealed to this court.

## ASSIGNMENTS OF ERROR

Hoops claims "[t]he court erred" in allowing Officer Brown's testimony regarding the preliminary breath test and in improperly sustaining of the State's objection to defense counsel's closing argument.

## STANDARD OF REVIEW

[1-4] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court. *Id.*

[5] In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond reasonable doubt. *State v. Rask*, 294 Neb. 612, 883 N.W.2d 688 (2016).

[6] In a harmless error review, an appellate court looks at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict surely would have been rendered, but, rather, whether the guilty verdict rendered in the trial was surely unattributable to the error. *Id.*

[7] Conduct of final argument is within the discretion of the trial court, and absent an abuse of that discretion, the trial court's ruling regarding final argument will not be disturbed. *State v. Stark*, 272 Neb. 89, 718 N.W.2d 509 (2006).

## ANALYSIS

### Hoops' Assignments of Error

As a threshold matter, we first address the State's argument that Hoops' "claims are not properly before this court." Brief for appellee at 6. The State claims that Hoops' assignments of error and corresponding arguments "focus[] solely on the alleged error[s] with the county court's rulings and take[] no issue with the district court's judgment on appeal." *Id.* The State, citing *State v. McGinn*, 303 Neb. 224, 928 N.W.2d 391 (2019), *modified on denial of rehearing* 303 Neb. 931, 932 N.W.2d 83, asserts that Hoops' failure to assign error specifically to the district court's judgment on appeal precludes this court from considering his appeal because "the only judgment that is reviewable by this court is the district court's judgment." Brief for appellee at 7.

[8,9] In *State v. Jennings*, 308 Neb. 835, 957 N.W.2d 143 (2021), released after briefing in this case, the Nebraska Supreme Court addressed whether an appellant's assigned errors attacking the judgment of the county court, rather than the judgment of the district court sitting as an intermediate court of appeals, are able to be considered on appeal from the judgment of the district court. The Supreme Court described the State's argument as having effectively fashioned *State v. McGinn, supra*, "into a grammatical litmus test that would preclude appellate review altogether if an assignment of error is imprecisely framed." *State v. Jennings*, 308 Neb. at 843, 957 N.W.2d at 150. The Supreme Court rejected this interpretation of *State v. McGinn, supra*, and emphasized:

> [W]e have explained that the function of assignments of error is to set out the issues presented on appeal, to advise the appellee of the question submitted for determination so the appellee knows what contentions must be met, and to advise the appellate court of the issues submitted for decision.

*State v. Jennings*, 308 Neb. at 843, 957 N.W.2d at 150. The Supreme Court further explained that "in appeals from the

district court sitting as an appellate court, the immediate question is whether the district court erred in its appellate review of the county court's decision, but review of that question necessarily involves considering the decision of the county court." *Id.* at 844, 957 N.W.2d at 151.

Here, while Hoops did not specifically name the court he claimed erred in his assignments of error, we read his references to "[t]he court" as referring to the county court. Hoops has claimed the county court erred in allowing testimony regarding a preliminary breath test and in sustaining the State's objection during his counsel's closing argument. While he does not assign as error the district court's order affirming his convictions and sentences, our review of the district court's order necessarily requires that we consider the decisions of the county court. See *State v. Jennings, supra*. In light of the Nebraska Supreme Court's decision in *State v. Jennings, supra*, Hoops' assignments of error are sufficient to inform this court and the State of the issues submitted for appellate review and what contentions must be met on appeal. As such, his assigned errors are reviewable, and we turn now to address the merits of his appeal.

## TESTIMONY REGARDING
## PRELIMINARY BREATH TEST

Hoops claims it was error to allow Officer Brown to testify that he had Hoops submit to a preliminary breath test and that the basis for his arrest of Hoops included, among other considerations, the preliminary breath test.

[10,11] Evidence of a preliminary breath test may be admitted for a limited purpose only. See *State v. Klingelhoefer*, 222 Neb. 219, 382 N.W.2d 366 (1986). As a general rule, preliminary breath test evidence is inadmissible as proof that a defendant was impaired or intoxicated; the admissibility of the results of a preliminary breath test is limited to the purpose of showing probable cause either for an arrest or for administering a chemical test. See *State v. Rask*, 294 Neb. 612, 883 N.W.2d 688 (2016). For that limited purpose, the admissibility

of the preliminary breath test is a question of law and should therefore be admitted into evidence out of the presence of the jury. See *State v. Klingelhoefer, supra* (determining that admission of preliminary breath test results into evidence was error, but such error was cured when trial court instructed jury to not consider test results in determining whether defendant was driving while intoxicated).

We note at the outset that the results of the preliminary breath test were not presented to the jury in this case. With that consideration in mind, we find the Nebraska Supreme Court's decision in similar circumstances in *State v. Rask, supra*, to be instructive. In *State v. Rask, supra*, the prosecution offered evidence during a jury trial that a preliminary breath test was administered during a traffic stop and the defendant was arrested after he was tested. The results of that test were not presented to the jury. See *id.* Without determining whether the admission of the evidence of the defendant's submission to a preliminary breath test constituted error, the Nebraska Supreme Court concluded that any error caused by that evidence was harmless because "[t]here was ample evidence to support" the defendant's impairment, including testimony that the defendant "had consumed approximately five to seven beers between 1 and 3 a.m." prior to his arrest and "smelled of alcohol," the defendant's admission to the police officer "that he was drunk," and the defendant's performance in three field sobriety tests. *Id.* at 618, 883 N.W.2d at 694.

Here, we first note that Officer Brown referenced the preliminary breath test three times during his testimony. Officer Brown first testified that after the one-leg stand test, he "was going to prepare to do the preliminary breath test." He then testified that after the one-leg stand test, he was going to "[a]sk [Hoops] if he . . . would be willing to provide a preliminary breath test." Officer Brown thereafter explained the basis for his opinion that Hoops "was impaired by an alcoholic beverage that night operating a vehicle," stating that he based that opinion on "the standardized field sobriety tests,

[his] observations, and the clues of impairment [he] observed, and the odor of the alcoholic beverage coming from [Hoops] and then the preliminary breath test and DataMaster." Hoops' counsel objected to Officer Brown's references to the preliminary breath test.

We similarly conclude that any error in the admission of Officer Brown's testimony regarding the preliminary breath test was harmless. Officer Brown made only brief and passing references to the preliminary breath test during his testimony, and the results of the test were not presented to the jury. Officer Brown testified that Hoops stated that he had at least three beers prior to the stop, and this testimony was not disputed. Although the ultimate issue of Hoops' impairment was disputed, Officer Brown's observations of Hoops' "bloodshot, watery eyes" and the smell of alcohol coming from Hoops' breath and person were also not disputed. We further note the cruiser camera footage showed Hoops' vehicle strike the median while making a wide turn into the outside lane prior to the traffic stop. The cruiser camera footage also showed when Hoops was not following Officer Brown's instructions to not move his head during the horizontal gaze nystagmus test, struggling to maintain his balance during the nine-step walk-and-turn and one-leg stand tests, and otherwise swaying and occasionally losing his balance while standing throughout the encounter. The recording also exhibited Hoops having slurred speech after Officer Brown placed him in the backseat of the cruiser. In light of this evidence, we conclude the jury's verdict in this case was surely unattributable to Officer Brown's passing references to the preliminary breath test during his testimony. Any error by the county court in this instance was harmless, and we conclude the district court did not err in affirming the judgment of the county court on this basis.

### OBJECTION SUSTAINED DURING COUNSEL'S CLOSING ARGUMENT

Hoops claims it was error for the county court to sustain the State's objection during his counsel's closing argument. As

set forth previously, Hoops' counsel made the following statement during closing arguments:

> And one thing that's missing — and this is important because when you're impaired, when you consumed alcohol, he's taught it dilates the — the vessels. It makes your face get red. It makes it become flushed. It makes it become heated. That is something that's consistent with someone who would be impaired by alcohol, would be there.

The State objected on the basis of "[f]acts not in evidence," and the county court sustained the objection.

Hoops argues on appeal that "[t]he court erred in sustaining the objection." Brief for appellant at 11. He claims that "[t]here was sufficient foundation for counsel to make the argument," as "[s]omeone having a flushed face and it being caused by alcohol is consistent with the evidence." *Id.* at 11-12. He further asserts the county court, in sustaining the State's objection, "place[d] its imprimatur on the argument that the absence of a flushed face is not relevant to impairment and should not be considered by the jury." *Id.* at 12.

As we previously described, Officer Brown affirmed during direct examination that having a flushed face could be a sign of a person's impairment by alcohol consumption. He also indicated in his testimony that not every person impaired by alcohol would have a flushed face. On cross-examination, Officer Brown confirmed that alcohol "causes the blood vessels to dilate or to heat up" and that such an effect on the body can result in a flushed face.

[12] We conclude the trial judge's decision to sustain the State's objection during Hoops' counsel's closing argument was not reversible error. It is improper for counsel to comment during closing argument on matters unsupported by the evidence. *State v. Robinson*, 272 Neb. 582, 724 N.W.2d 35 (2006), *abrogated on other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010). Officer Brown's testimony indicated that alcohol could cause a flushed face and that a

flushed face could be a sign of impairment. His answers on cross-examination regarding the dilation of blood vessels and the face "heat[ing] up" served to explain the biological processes that result in alcohol consumption causing a flushed face. He did not testify that a flushed face is "consistent" with impairment caused by alcohol or otherwise "would be there" in cases of such impairment, and such assertions were not supported by the evidence adduced at trial.

[13] We further conclude that even if the trial judge erroneously sustained the State's objection, the trial judge's decision did not cause prejudice to Hoops. To establish reversible error, a defendant must demonstrate that a trial court's conduct, whether action or inaction during the proceeding against the defendant, prejudiced or otherwise adversely affected a substantial right of the defendant. *State v. Galindo*, 278 Neb. 599, 774 N.W.2d 190 (2009). See, also, *State v. Stark*, 272 Neb. 89, 718 N.W.2d 509 (2006). We note that prior to closing arguments, the trial judge instructed the jurors that they "must follow [their] recollection of the evidence" in considering the respective closing arguments of the State and defense. Further, in sustaining the State's objection, the trial judge simply said, "Sustained." When Hoops' counsel contested the objection, the trial judge responded, "The objection is sustained." No further comment was made regarding the objection, nor was the jury instructed to disregard counsel's statement regarding a flushed face. Hoops' counsel then proceeded to state, "Hoops did not have a flushed face. He wasn't impaired." The State did not object to this statement, and the trial judge made no comment. Further, the first jury instruction provided in part that, if it appeared to the jury that the trial judge "commented on the evidence[] during either the trial or the giving of these instructions," the jury "must disregard such comment entirely." The trial judge's statements that the State's objection was sustained did not, as Hoops asserts, give "the jury the imprimatur of the judge on the government's incorrect objection that [Hoops' lack of a flushed face] was not worthy of consideration" or

otherwise "improperly suggest[] that the evidence, and the argument of counsel, was not an issue." Brief for appellant at 13. Hoops' counsel was fully able to bring to the jury's attention the absence of a flushed face and other countervailing evidence and arguments weighing against the State's claim that Hoops was impaired. We therefore find the county court's decision to sustain the State's objection was not reversible error, and the district court did not err in affirming the judgment of the county court.

## CONCLUSION

For the reasons set forth above, we affirm the district court's order affirming Hoops' convictions and sentences.

AFFIRMED.