MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2025 ME 75
Docket:         Pen-23-461
Argued:         September 11, 2024
Decided:        August 14, 2025

Panel:          STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## ANGELENA QUIRION

STANFILL, C.J.

[¶1]  Angelena Quirion appeals from a judgment of conviction for several drug offenses entered by the trial court (Penobscot County, *Mallonee, J.*) after a jury trial.[1]  Quirion argues that the court abused its discretion when it sustained the State's objection to a portion of her closing argument.[2]  We agree, but because we conclude that the error is harmless, we affirm the convictions.

---

[1]  Quirion was convicted of three counts of aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(D), (G), (M) (2025), and one count of unlawful possession of scheduled drugs (Class D), 17-A M.R.S. § 1107-A(1)(C) (2025).  In addition, the court adjudicated and entered judgment on seven counts of criminal forfeiture of property.  *See* 15 M.R.S. § 5826 (2021).  The criminal forfeiture statute has been amended since the crimes were committed, but not in a way that affects this appeal, *see* P.L. 2023, ch. 196, § 1 (effective Oct. 25, 2023) (codified at 15 M.R.S. § 5826(6) (2025)), and the forfeiture counts are not at issue on appeal in any event.

[2]  Quirion also argues that her constitutional rights to due process and compulsory process were violated based on various improper communications to a witness and a potential witness about the possibility that their testimony could result in exposure to criminal charges.  We are not persuaded.  The record here cannot support a determination that anyone communicated to either witness in a way that "threaten[ed] and intimidate[d] the witness into refusing to testify," *State v. Fagone*,

## I. BACKGROUND

[¶2]  Viewing the evidence admitted at trial in the light most favorable to the verdicts, the jury rationally could have found the following facts beyond a reasonable doubt.  *See, e.g.*, *State v. Harding*, 2024 ME 67, ¶¶ 2, 13, 322 A.3d 1175.

[¶3]  On December 1, 2021, a police officer in Bangor stopped a vehicle with a loud exhaust.  Quirion was the driver.  The officer saw drug paraphernalia in the vehicle and conducted a search.  In a purse on Quirion's lap, police found about $3,000 in cash separated by denomination, a hypodermic needle, a glass pipe, a plastic bag commonly used for packaging small quantities of illegal drugs, and 32 hydromorphone pills.  Elsewhere in the vehicle, police found about 34 grams of fentanyl, 7 grams of methamphetamine, 1.4 grams of cocaine, many unused baggies, and a scale.  Quirion had a concealed firearm on her person.  Quirion had two passengers, but she told the police that all of the drugs were hers, and she claimed that she had purchased them for an amount far lower than the street value.

[¶4]  On January 20, 2022, law enforcement officers responded to the Androscoggin County Jail after Quirion used a counterfeit bill to post bail for

---

462 A.2d 493, 497 (Me. 1983); *see also Webb v. Texas*, 409 U.S. 95, 95-98 (1972); *State v. Berry*, 1998 ME 113, ¶¶ 6-8, 711 A.2d 142.

someone incarcerated there. Quirion was in the driver's seat of a vehicle parked outside the jail. After discovering that Quirion and her passenger, Adam Jalbert, were subject to bail conditions, an officer searched the vehicle and discovered large quantities of illegal drugs and drug paraphernalia. Under the passenger seat and between the passenger seat and the center console, officers found 3.4 grams of fentanyl, 2.4 grams of methamphetamine, and 1.4 grams of cocaine. In various bags and containers in the backseat area and the trunk, including a "Walmart bag" found on the floorboard right behind the center console, officers found about 300 grams of fentanyl, 495 grams of methamphetamine, and 245 grams of cocaine. These drugs had a street value of approximately $115,000 and were packaged in ways commonly used for bulk resale. During the search of the vehicle, officers also found a firearm, a scale, and unused baggies commonly used for packaging illegal drugs for sale.

[¶5 ] The next day, January 21, 2022, Maine Drug Enforcement Agency agents executed a search warrant on Quirion's home in Bangor. In Quirion's bedroom, agents discovered what appeared to be a drug sales ledger, several firearms, a "finger"—which is approximately ten grams packaged together—of fentanyl laying on the floor, and an envelope labeled "Money from Guy for Fing." A locked and concealed door in the hallway led to a stairway, at the top of which

4

was a concealed safe. In the safe, officers found about 850 grams of fentanyl, 800 grams of methamphetamine, and $30,000 in cash, including $20,000 wrapped together and labeled "Angel's 20!" The drugs in the safe were packaged in bulk and had an estimated street value of over $200,000.

[¶6] In total, the state seized about 1300 grams of methamphetamine, 1200 grams of fentanyl, and 247 grams of cocaine.

[¶7] The State charged Quirion by indictment with one count of aggravated trafficking of fentanyl, one count of aggravated trafficking of methamphetamine, one count of aggravated trafficking of cocaine, and one count of unlawful possession of hydromorphone. *See* 17-A M.R.S. § 1105-A(1)(D), (G), (M) (2025); 17-A M.R.S. § 1107-A(1)(C) (2025). The indictment also included seven counts seeking criminal forfeiture of five firearms and $33,404 in cash. *See* 15 M.R.S. § 5826 (2021). In each of the three Class A aggravated trafficking charges, the State alleged that the conduct occurred "pursuant to one continuing scheme and course of conduct" and sought to aggregate the quantities of scheduled drugs involved in the three incidents described above. *See* 17-A M.R.S. § 1106-A(1) (2025).[3]

---

[3] Section 1106-A(1) states, in relevant part: "Quantities of scheduled drugs involved in violations of section 1103, 1105-A, 1105-B, 1105-C or 1106 committed pursuant to one scheme or course of conduct and confiscated within a 6-month period may be aggregated to charge a single violation of appropriate class." 17-A M.R.S. § 1106-A(1) (2025).

[¶8]  The court held a four-day jury trial in October 2023.  Part of the defense theory was that the State's evidence left reasonable doubt as to whether Quirion intentionally or knowingly possessed the illegal drugs found by law enforcement.  *See* 17-A M.R.S. §§ 1105-A(1), 1103(1-A) (2025) (including intentional or knowing trafficking as an element of aggravated trafficking); 17-A M.R.S. § 1101(17)(C)-(D) (2025) (defining "traffick" to include "[t]o possess with the intent to" sell).  During closing argument, while discussing the vehicle search outside the Androscoggin County jail, defense counsel suggested in various ways that the illegal drugs belonged to Quirion's passenger, Jalbert.  For example, defense counsel stated,

> And this is where the definition of possession comes in.  You have to know what's in there to be convicted of possessing it. . . . What happened when [Quirion] got out of the car? . . . They take her out, and before that who had they seen?  Jalbert.  He's on the driver's side in the back seat where the Wal-Mart bags are.  Cop said he's checking the Wal-Mart bags.  And then what do we hear during the arrest and stop?  Those are Jalbert's Wal-Mart bags. . . . So is that possession by my client because Jalbert has drugs in her car?

This part of the closing argument drew no objection from the State.  Later in the argument, defense counsel returned to the topic of the drugs in the Walmart bag, and the prosecutor objected:

[DEFENSE COUNSEL]:  Did the State prove who owned this stuff or did they just go, wow, this is a lot of drugs?  And [Jalbert's] statement that he

6

owned the drugs in the front and the comment that the—what are you doing, this is all part of the evidence. The Wal-Mart bags were Jalbert's.

[PROSECUTOR]: Objection, arguing facts not in evidence, Your Honor.

[DEFENSE COUNSEL]: That was in evidence. That was exactly what the cop said.

[PROSECUTOR]: That was not in evidence, Your Honor.

THE COURT: The objection's sustained. Please move on.

[DEFENSE COUNSEL]: Tell me what proof there is she knew what was in that bag—those bags and in the Wal-Mart bags? Tell me. Next they get a search warrant . . . .

In the State's rebuttal closing argument, the prosecutor referred back to this exchange, stating:

Now, Jalbert did have a few items at his chair and under him, all of user size. But there is a mass quantity [in a] common place behind both of them, both of them in reach of. And despite what [defense counsel] said during argument that we objected to, there's nothing in the record to suggest that . . . Jalbert claimed ownership of the Wal-Mart bags. I do not know where that's coming from other than wishful thinking that was not in the testimony you heard.

[¶9] After closing arguments, Quirion moved for a mistrial, contending primarily that the State's rebuttal closing argument was too lengthy and wide-ranging in scope. She also stated that the jury *had* heard evidence

supporting counsel's statements relating to Jalbert's ownership of some of the drugs. The court responded,

> I do not have an independent memory of all the testimony upon which these factual disputes are based, and so I'm unable to rule on that one way or another. The instructions I'm going to give will emphasize that opening and closing are not evidence, as I've told them several times before, and that they will have to remember and evaluate the evidence given them.

The court's jury instructions included the following statement: "[N]othing I have said or done in presiding at trial . . . should be taken as an indication about the facts of the case because those facts are for you and you alone to decide based on the evidence presented." The court also instructed the jury that it was required to "focus solely on deciding the facts from the evidence," that it was required to "consider only the evidence in the case in reaching [a] verdict," and that "closing arguments are not evidence." The court added, "It was proper for counsel to comment, but you must remember what was said, and you must evaluate what you all collectively remember."

[¶10] The jury returned guilty verdicts on all four of the drug charges, and the court ordered forfeiture of five firearms and $33,404 in cash. The court

8

imposed sentence and entered a judgment on the verdicts.[4]  Quirion timely appealed.  *See* M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶11]  Quirion argues that the trial court erroneously sustained the State's objection during her closing argument and that by doing so it improperly indicated to the jury that her attorney's argument was not supported by the evidence.  She argues that the ruling usurped the jury's roles of determining what the trial witnesses said and finding facts in the face of competing evidence, and that the ruling therefore constituted an improper expression of opinion on a fact issue and violated her constitutional rights to an impartial trial by jury and to an effective closing argument.  *See State v. Bachelder*, 403 A.2d 754, 758 (Me. 1979) (discussing the right to an impartial trial); *State v. Gilman*, 489 A.2d 1100, 1102 & n.2 (Me. 1985) (discussing the right of a criminal defendant to present closing argument); 14 M.R.S. § 1105 (2025) (prohibiting the court from "express[ing] an opinion upon issues of fact arising in the case").  We review a court's ruling on an objection to closing

---

[4]  On one of the aggravated trafficking counts, the court sentenced Quirion to thirty years in prison with all but twenty-five years suspended and four years of probation.  The court imposed concurrent sentences on the remaining charges, as well as fines totaling $655. The Sentence Review Panel denied Quirion's application for leave to appeal from her sentence. *See State v. Quirion*, No. SRP-23-462 (Me. Sent. Rev. Panel Jan. 30, 2024); M.R. App. P. 20.

argument for an abuse of discretion, *State v. Winslow*, 2007 ME 124, ¶¶ 17-18, 930 A.2d 1080, and we interpret statutes and constitutional provisions de novo, *State v. Labbe*, 2009 ME 94, ¶ 2, 979 A.2d 693.

[¶12]    Title 14 M.R.S. § 1105 provides "definitive protection to an accused's constitutional right to have an impartial trial," *Bachelder*, 403 A.2d at 759; *see State v. Philbrick*, 669 A.2d 152, 155-56 (Me. 1995), and it also serves to protect the constitutional right to a trial by jury, *State v. Edwards*, 458 A.2d 422, 424 (Me. 1983).  The statute provides as follows:

> During a jury trial the presiding justice shall rule and charge the jury, orally or in writing, upon all matters of law arising in the case but *shall not*, during the trial, including the charge, *express an opinion upon issues of fact arising in the case, and such an expression of opinion is sufficient cause for a new trial if either party aggrieved thereby and interested desires it, and the same shall be ordered accordingly by the law court on appeal in a civil or criminal case*.

14 M.R.S. § 1105 (emphasis added).  We have interpreted section 1105 to prohibit a trial court from directly or indirectly "suggesting that [it] endorses the cause of one side over that of the other side by emphasizing specific evidence in the case" or "by giving the jury a one-sided summation of the evidence," from "disparag[ing] in the minds of the jury the accused's theory of the case," and from "creat[ing] the impression with the jury that [the court] entertains doubts as to the defendant's veracity."  *Bachelder*, 403 A.2d at 759.

Comment on the evidence by the trial court in the jury's presence is rarely necessary or advisable, and rulings by the court that require commentary on the state of the evidence can usually be announced outside of the presence of the jury. *See* Alexander, *Maine Jury Instruction Manual* § 5-5 at 5-14 (2025 ed.) ("Comments on the evidence made outside the presence of the jury do not generate similar concerns."); *State v. Just*, 2007 ME 91, ¶ 15, 926 A.2d 1173.

[¶13] "[T]he right of a defendant to have counsel deliver a proper closing argument on the evidence and the applicable law is part and parcel of his right to effective assistance of counsel . . . ." *State v. Liberty*, 498 A.2d 257, 259-60 (Me. 1985); *see State v. Robert R.*, 262 A.3d 810, 815-16, 819-21 (Conn. 2021) (holding that when the trial court improperly sustained an objection to the defense closing, the court deprived the defendant of his right to the assistance of counsel). Although the scope of factual assertions made during closing arguments must be circumscribed by the evidence before the fact finder, *State v. Daluz*, 2016 ME 102, ¶ 64, 143 A.3d 800; *State v. Reilly*, 446 A.2d 1125, 1128-29 (Me. 1982), attorneys must also be allowed to attempt to convince the jury to make reasonable inferences in favor of the party they represent, *Liberty*, 498 A.2d at 259-60; *State v. Gould*, 2012 ME 60, ¶¶ 19-21, 43 A.3d 952. "An attorney does not reference evidence outside the record, or evidence contrary

to the record, when arguing for any conclusion based on facts and testimony in evidence and the reasonable inferences that can be drawn from that evidence." Alexander, *Maine Jury Instruction Manual* § 5-7 at 5-22 (2025 ed.).

[¶14] When, in the presence of the jury, the state objects that a particular closing argument is based on facts that were not admitted in evidence, the trial court must balance the risk of permitting improper closing argument against the risk of violating the defendant's rights to a trial by jury, to an impartial trial, and to present closing argument. *See Liberty*, 498 A.2d at 259-60; *Edwards*, 458 A.2d at 423-25. Proper jury instructions will frequently cure any prejudice caused by improper argument, especially where the impropriety is not egregious. *See, e.g., State v. Farley*, 2024 ME 52, ¶¶ 29-33, 319 A.3d 1080; *State v. Dolloff*, 2012 ME 130, ¶ 55, 58 A.3d 1032; *State v. MacLean*, 560 A.2d 1088, 1090-91 (Me. 1989). A mischaracterization of the evidence by the *court*, however, presents a greater risk of prejudice. *See* 14 M.R.S. § 1105; *Edwards*, 458 A.2d at 424 ("It is for the jury, and the jury alone, to determine . . . what witnesses said at trial."); *State v. Brown*, 142 Me. 16, 18-22, 45 A.2d 442, 443-45 (1946) (explaining that the "damage" caused when a court provided to the jury a one-sided "summary of the testimony" was not remedied by "telling the jury that they are the judges of the facts"); *Robert R.*, 262 A.3d at 815-16, 819-21

(concluding that a defendant's right to present a closing argument was violated when the trial court sustained the prosecutor's objection that defense counsel's argument was not supported by the evidence). In response to such an objection, therefore, unless the court is certain that no evidence has been presented that could support the inference suggested by the defendant's closing argument, the court may simply remind the jury that closing arguments are not evidence and that the jury's memory of the evidence controls. If the objection is erroneously sustained, the court risks misleading the jury and undercutting the defendant's right to present closing argument.

[¶15] Here, as set forth above, the objection—"arguing facts not in evidence"—was to defense counsel's assertion that there was evidence that "the Wal-Mart bags were Jalbert's." In fact, a law enforcement officer had testified that Quirion "claim[ed] ignorance about everything in the vehicle" and that she "blame[d] it all on Jalbert." The officer also testified that Quirion stated that Jalbert had brought "a Wal-Mart bag" into the vehicle. This evidence was sufficient to support defense counsel's argument that the Walmart bags were Jalbert's, and the court therefore erred when it sustained the State's objection.[5]

---

[5] As noted above, in responding to Quirion's motion for a mistrial the court later acknowledged that it could not be sure whether the evidentiary record included any evidence supporting defense counsel's assertion, further highlighting the need for caution in sustaining an objection to the defense

*See Winslow*, 2007 ME 124, ¶ 18, 930 A.2d 1080; *State v. Covington*, 2023 ME 72, ¶ 12, 304 A.3d 290.

[¶16]  We agree with Quirion that the court's ruling generated the concerns that section 1105 serves to protect against.  *See Brown*, 142 Me. at 18-22, 45 A.2d at 443-45; *Bachelder*, 403 A.2d at 759; *State v. Linnell*, 408 A.2d 693, 694-95 (Me. 1979); *Edwards*, 458 A.2d at 423-25.  Unlike other rulings a court may have occasion to issue during closing argument, a ruling on an objection that defense counsel has argued facts not in evidence is necessarily a comment on the state of the evidence.  Thus, special care is required to guard against the risk posed by a mischaracterization of the evidence by the court. When a court states that an assertion made during closing argument is not grounded in the evidence, the court communicates to the jury that the jury cannot make the inference counsel suggested because no evidence supports it. If the ruling is incorrect, the court will have impaired both the defendant's right to make proper closing argument and the jury's ability to exercise its duty to determine what the evidence is and what facts it believes are true.  *See Liberty*, 498 A.2d at 259-60; *Robert R.*, 262 A.3d at 815-16, 819-21; *Bachelder*, 403 A.2d at 759.

---

argument in front of the jury.  To be clear, so long as the objection is well-founded, there is no error in sustaining it.  The problem arises when the argument is, in fact, supported by evidence.

[¶17]   Courts in other states have also determined that erroneously sustaining an objection to the defense closing may be considered an improper comment on the evidence.  The Court of Appeals of Oregon concluded that when a trial court improperly sustained a prosecutor's objection that statements made during the defense closing argument were unsupported by the evidence, the trial court effectively "told the jury to disregard evidence that was critical to [the] defendant's theory of the case."  *State v. Sanders*, 497 P.3d 1259, 1259-60 (Or. Ct. App. 2021).  Similarly, the Court of Appeals of Washington vacated a conviction where the trial court interrupted the defendant's closing argument and erroneously stated that defense counsel's assertions were not supported by the evidence.  *City of Seattle v. Arensmeyer*, 491 P.2d 1305, 1307-09 (Wash. Ct. App. 1971).  When the trial court did so, "it commented on the evidence by revealing what it believed the evidence to mean."  *Id.* at 1308.

[¶18]   Here, the trial court's erroneous ruling was tantamount to an improper expression of opinion on the evidence.  We must therefore determine whether to apply harmless error review, and if so, whether the error here was harmless.  *See. e.g.*, *State v. Fleming*, 2020 ME 120, ¶ 34, 239 A.3d 648.

[¶19]  In *State v. Kessler*, a case involving a challenge under section 1105, we expressly rejected the argument that "*any* expression of opinion upon issues

of fact automatically becomes sufficient cause for and mandates a new trial."
453 A.2d 1174, 1176 (Me. 1983) (emphasis added). We explained that "the
nature and purpose of our rules of criminal procedure as well as our interest in
the fair administration of justice require that statutes such as section 1105 be
read in the context of the procedural rules," including the rule governing
harmless and obvious error.[6] *Id.* We concluded that the trial court's improper
remark in the presence of the jury—describing an exhibit purported to be
cocaine as "a sizeable amount"—constituted harmless error because the
"*quantity* of cocaine was not in issue" in the case. *Id.* at 1175-77; *see also*
*Edwards*, 458 A.2d at 425 (expressly applying harmless error review). Other
states have also applied a harmless error analysis in this context. *See State v.*
*Stokes*, No. M1999-02252-CCA-R3-CD, 2000 WL 776610, at *3 (Tenn. Crim.
App. June 9, 2000) (holding that a trial court erroneously sustained an objection
to defense counsel's statement in closing argument, but the error was
harmless); *State v. Hoops*, 965 N.W.2d 396, 405-06 (Neb. Ct. App. 2021)
(determining that even if the trial court erroneously sustained the State's

---

[6] We also noted that section 1105 had been "interpreted to apply only to controverted facts," citing cases holding that it was permissible for trial courts to aid jurors by stating undisputed facts. *State v. Kessler*, 453 A.2d 1174, 1176 (Me. 1983); *see State v. Day*, 79 Me. 120, 124-25, 8 A. 544, 545 (1887); *State v. Jones*, 137 Me. 137, 139-42, 16 A.2d 103, 104-06 (1940); Alexander, *Maine Jury Instruction Manual* § 5-5 at 5-14 (2025 ed.) ("It once was widespread practice for judges to summarize the evidence and the contentions of the parties for the jury.").

objection during the defense closing argument, the error was harmless); *see also Sanders*, 497 P.3d at 1260 (applying a harmless error analysis to the improper sustaining of an objection to closing argument, but concluding that the error was not harmless); *Arensmeyer,* 491 P.2d at 1309 (same). We conclude that the error here is subject to harmless error review.[7]

[¶20]   Under the harmless error standard, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights shall be disregarded." M.R.U. Crim. P. 52(a). In general, a trial error is harmless "if it is highly probable that the error did not affect the judgment." *State v. Guyette*, 2012 ME 9, ¶ 19, 36 A.3d 916 (quotation marks omitted). A trial error that violates constitutional rights "may be deemed harmless if we are satisfied beyond a reasonable doubt, based on the trial record as a whole, that the error

---

[7]   We have stated that "[i]n the absence of a waiver, the denial of the right to present closing argument must result in reversal of the conviction without regard to whether the defendant was prejudiced." *State v. Gilman*, 489 A.2d 1100, 1103 (Me. 1985) (emphasis and quotation marks omitted); *see United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984); *Herring v. New York*, 422 U.S. 853, 856-65 (1975). *But see, e.g.*, *Lake v. State*, 532 S.W.3d 408, 410-18, 413 n.24 (Tex. Crim. App. 2017) (discussing the issue and disagreeing with our conclusion in *Gilman*). In *Gilman*, the trial court found the defendant guilty without offering the defendant any opportunity whatsoever to present a closing argument. 489 A.2d at 1101-02. This case does not present such circumstances, and we have never held that an erroneous restriction on closing argument cannot be harmless. *See State v. Liberty*, 498 A.2d 257, 260 (Me. 1985) (applying a harmless error analysis in a case involving an erroneous limitation on the right to present a closing argument); *Glebe v. Frost*, 574 U.S. 21, 24 (2014) ("[E]ven assuming that *Herring* established that *complete denial* of summation amounts to structural error, it did not clearly establish that the *restriction* of summation also amounts to structural error."); *Rushen v. Spain*, 464 U.S. 114, 117 n.2 (1983) (stating that a violation of the right to counsel is "subject to harmless error analysis unless the deprivation, by its very nature, cannot be harmless" (citations omitted)).

did not contribute to the verdict obtained." *Fleming*, 2020 ME 120, ¶ 34, 239 A.3d 648 (quotation marks omitted); *see State v. Judkins*, 2024 ME 45, ¶¶ 19-27, 319 A.3d 443.

[¶21]  Here, by sustaining the State's objection during Quirion's closing argument, the court indicated that the jurors should not consider evidence that Jalbert brought the Walmart bag full of drugs into Quirion's vehicle before the stop outside the Androscoggin County Jail.  Although that evidence was relevant to Quirion's theory of the case and to a disputed fact, we are convinced that the error was harmless.

[¶22]  First, defense counsel had already argued to the jury—without objection—that Jalbert brought the drugs in the Walmart bag into the car, when he said: "They take her out, and before that who had they seen?  Jalbert.  He's on the driver's side in the back seat where the Wal-Mart bags are.  Cop said he's checking the Wal-Mart bags.  And then what do we hear during the arrest and stop?  Those are Jalbert's Wal-Mart bags. . . . So is that possession by my client because Jalbert has drugs in her car?"  Thus, the objected-to argument was in fact presented to the jury.  *See Hoops*, 965 N.W.2d at 406 (concluding that any error was harmless where defense counsel was able to present the intended argument to the jury notwithstanding the court's ruling).

18

[¶23] Second, the court's brief ruling did not suggest the court's personal opinion of the evidence. *See State v. Jones*, 137 Me. 137, 142, 16 A.2d 103, 106 (1940) (describing harmful comments by the court as those that embody an "authoritative expression of the opinion of the presiding justice himself on issues of fact"); *Hoops*, 965 N.W.2d at 406 (concluding that any error was harmless where the court simply stated "[s]ustained" and "[t]he objection is sustained," without commenting further on the evidence). Cases in which we have found judicial comments required vacatur involved a much greater interference with the process. *See Edwards*, 458 A.2d at 423-25 (concluding that the error was not harmless where the court, on its own accord and over objections by the defendant and the State, provided to the jury for use during deliberations a typewritten "chronology" of disputed, material facts consistent with the testimony of the State's witnesses); *Brown*, 142 Me. at 18-22, 45 A.2d at 443-45 (holding that the trial court erred by providing its own one-sided summary of the testimony that included comments "obviously" suggestive of the weight the jury should give certain testimony).

[¶24] Third, the court instructed the jury that "nothing I have said or done" is "an indication of my opinion about the facts because those facts are for you and you alone to decide based on the evidence presented." The court also

instructed the jury that the jury's memory of the evidence was controlling: "It was proper for counsel to comment, but you must remember what was said, and you must evaluate what you all collectively remember." *See State v. Hauge*, 79 P.3d 131, 140, 152 (Haw. 2003) (concluding that similar instructions cured any prejudicial effect of improper comments by a trial court during the defendant's closing argument); *Hoops*, 965 N.W.2d at 406 (citing similar instructions as contributing to a conclusion that any error in sustaining a similar objection was harmless); *accord State v. Sivins*, 155 P.3d 982, 987 (Wash. Ct. App. 2007).

[¶25]  Finally, each of the aggravated trafficking charges alleged that Quirion was trafficking in a specific drug "[p]ursuant to one continuing scheme and course of conduct beginning on or about December 01, 2021, and continuing through January 21, 2022."  The charges were not based on a single event or drug seizure.  In addition, the court properly instructed the jury that Quirion could be found guilty as either an accomplice or a principal, and the State argued to the jury that even if some of the drugs were Jalbert's, Quirion was at least guilty as his accomplice.  Taken as a whole, the evidence of guilt was substantial and overwhelming. *See Judkins*, 2024 ME 45, ¶¶ 23, 25, 319 A.3d 443 (explaining that a relevant consideration is whether the evidence

supporting the conviction was overwhelming); *State v. Coleman*, 2018 ME 41,

¶ 26, 181 A.3d 689; *State v. Goodall*, 407 A.2d 268, 276 (Me. 1979).

[¶26]  Based on the combination of all of these factors, we conclude that

the court's erroneous ruling could not have affected the verdict in this case.

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Angelena L. Quirion

Aaron M. Frey, Attorney General, and Jason Horn, Asst. Atty. Gen. (Orally), Office of the Attorney General, Augusta, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2021-3804
FOR CLERK REFERENCE ONLY